**Hampton v. Bethesda Hospital, et al**
**Case No. C-880653**
**Hamilton County, (1st)**
**Decided January 17, 1990**
[Cite as 1 AOA 28]

*Preiser Law Offices and Monty L. Preiser, Esq., P.O. Box 1306, Charleston, West Virginia 25325; Marlene Penny Manes, Esq., 914 Main Street, Cincinnati, Ohio 45202, and Kenneth Baylen, Esq., Suite 250, 6581 Harrison Avenue, Cincinnati, Ohio 45247, for Appellants,*

*Rendigs, Fry, Kiely & Dennis and J. Kenneth Meagher, Esq., 900 Central Trust Tower, Cincinnati, Ohio 45202, for Appellees.*

UTZ, J.

In this appeal, which stems from the trial of a malpractice action in the court of common pleas, it is asserted that the trial court erred when it permitted certain defendants to present the testimony of experts who had not been properly identified as expert witnesses prior to trial.

For the reasons which follow, we reverse the judgment of the trial court.

Plaintiff-appellant Anna Hampton, in anticipation of the birth of a child, became a patient of Dr. James Downey. Dr. Downey was associated with defendant-appellee Dr. John Jager (a physician specializing in obstetrics and gynecology) in a corporation known as Downey and Jager, M.D., Inc. (also a defendant-appellee). Apparently, Dr. Downey became ill and Anna Hampton was placed under the care of Dr. Jager.

The course of Mrs. Hampton's pregnancy was unremarkable until August 4, 1981. On that date, a Caesarean section was performed by a resident (Dr. James Pigg) to relieve the fetal distress that had resulted from the twisting of the umbilical cord around the child's neck. Although the delivery itself was successful, the child was found, for reasons that remain in dispute, to have suffered brain damage, and he died approximately two years later in 1983.

In their complaint, Anna Hampton and her husband, plaintiff- appellant David Hampton, sought money damages for personal injuries allegedly sustained as a result of medical care and treatment received during and after the birth of their son, Eric Hampton.

In 1985, plaintiff-appellant Inez Cox, as administratrix and personal representative of the estate of Eric Hampton, and on behalf of the next of kin of Eric Hampton, filed a wrongful-death complaint against the defendants. The two complaints were consolidated for purposes of trial.

A trial was begun in April of 1987. Prior to the completion of the plaintiffs' case, a settlement was reached between the plaintiffs and Bethesda Hospital, including Drs. Pigg, Merrill, Stevenson and Hewitt. At the close of plaintiffs' case, the trial court directed a verdict in favor of Dr. Downey (this order is not a part of the instant appeal). After the trial was completed, the jury rendered a verdict in favor of defendants John Jager and Downey and Jager M.D., Inc. (hereinafter referred to as "Jager").

The plaintiffs then filed a motion for judgment notwithstanding the verdict and/or a motion for a new trial. The trial court overruled these motions. The plaintiffs now appeal.

In their first assignment of error, the plaintiffs allege the trial court erred in permitting five experts to testify at trial on behalf of Jager despite the fact that these experts were not properly identified prior to trial. This assignment is well taken.

In the case *sub judice,* the plaintiffs, prior to trial, propounded interrogatories to Jager to determine the names and opinions of the expert witnesses who would testify at trial. Jager responded that Philip H. Elliot, M.D., would be the sole expert witness used at trial. Further, although ordered to do so by the trial court, Jager failed to file a pretrial statement setting forth the names of the experts to be used as witnesses. The plaintiffs argue that they were surprised and prejudiced by Jager's misrepresentations concerning the expert witnesses.

Jager asserts, however, that the plaintiffs were cognizant that the five experts would testify at trial because they were listed as expert witnesses for Bethesda Hospital (Bethesda), a co-defendant of Jager. Thus, Jager argues, even though the plaintiffs and Bethesda settled their dispute, the plaintiffs were not surprised or prejudiced by the testimony of the five experts on Jager's behalf.

Civ. R. 26 (E) (1) (b) is applicable herein and states in pertinent part:

(E) A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows: (1) A party is under a duty seasonably to supplement his response with respect to any question addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

The purpose of this rule is to prevent surprise to either party. *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St. 3d 83, 482 N.E. 2d 1248.

It is our conclusion that this objective was not achieved in the case *sub judice.* Although the plaintiffs were aware that the five experts might testify at trial on behalf of Bethesda, they cannot be held to have foreseen that Bethesda would settle its dispute with the plaintiffs and that Bethesda's expert witnesses would then become expert witnesses for Jager. Based solely on the facts and circumstances of this case, we find that Jager was afforded ample opportunity but failed to comply with the requirements of Civ. R. 26 (E) (1) (b), and that the plaintiffs were prejudiced by Jager's noncompliance. Accordingly, we hold that the

trial court erred as a matter of law in allowing Jager's fiver expert witnesses to testify at trial.

In their second assignment of error, the plaintiffs allege the trial court erred in failing to grant their motions for judgment notwithstanding the verdict and/or a new trial.

"The test to be applied by a trial court in ruling on a motion for judgment notwithstanding the verdict is the same test to be applied on a motion for a directed verdict." *Posin v. A.B.C. Motor Court Hotel* (1976), 45 Ohio St. 2d 271, 275, 344 N.E.2d 334,338. Review of "[a] motion for directed verdict does not present a question of fact or raise factual issues, but instead presents a question of law, even though in deciding such a motion it is necessary to review and consider the evidence." *Ruta v. Breckenridge-Remy Co.* (1982), 69 Ohio St. 2d 66, 430 N.E.2d 635. The trial and appellate courts, without weighing the evidence, must construe the evidence most strongly in favor of the non-moving party and determine whether reasonable minds could come to but one conclusion on the evidence submitted, that conclusion being adverse to such party. If so, a motion for judgment notwithstanding the verdict should be granted. See *Strother v. Hutchinson* (1981), 67 Ohio St. 2d 282, 423 N.E.2d 467.

Our review of the record reveals that both parties presented credible evidence concerning the cause of Eric Hampton's brain damage and death. Under these circumstances, we conclude that reasonable minds could not come to but one conclusion on the evidence submitted. Accordingly, the trial court did not err when it overruled the plaintiffs' motion for judgment notwithstanding the verdict.

However, the plaintiffs' motion for a new trial should have been granted since an error of law (testimony of unidentified expert witnesses) occurred during the trial. Civ. R. 59 (A) (9). Accordingly, the judgment of the trial court is reversed and the cause remanded for a new trial involving only those parties which remained in the action subsequent to the trial court's directed verdict in favor of Dr. Downey.

SHANNON, P.J., and DOAN, J., CONCUR.