HUFFMAN ET AL., APPELLANTS, *v.* HAIR SURGEON, INC., APPELLEE.

[Cite as Huffman *v.* Hair Surgeon, Inc. (1985), 19 Ohio St. 3d 83.]

(No. 84-1592—Decided August 9, 1985.)

*Gehrig, Parker & Baldwin* and *Michael F. Gehrig,* for appellants.

*Rendigs, Fry, Kiely & Dennis* and *John W. Hust,* for appellee.

*Keating, Ritchie, Lyon & Norwine* and *Michael F. Lyon,* urging reversal for *amicus curiae* Ohio Academy of Trial Lawyers.

*Per Curiam.* This court held in the syllabus of *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, that "Civ. R. 37 permits the exclusion of expert

testimony pursuant to a motion in limine as a sanction for the violation of Civ. R. 26(E)(1)(b)." In reaching this conclusion we reasoned at 86:

"One of the purposes of the Rules of Civil Procedure is to eliminate surprise. This is accomplished by way of a discovery procedure which mandates a free flow of accessible information between the parties upon request, and which imposes sanctions for failure to timely respond to reasonable inquiries. Appellants argue that a continuance should have been requested and granted once the expert witness' identity was discovered by appellee. An intentional violation of the rules should not be so easily disregarded, however.

"We therefore conclude that Civ. R. 37 permits the exclusion of expert testimony pursuant to a motion in limine as a sanction for the violation of Civ. R. 26(E)(1)(b). * * *"

Shortly thereafter, we similarly noted that "[t]he *Jones* ruling was based upon specific state Rules of Civil Procedure dealing with discovery. The reasoning in *Jones* is no less compelling in the instant case, in which Rule 21 of the Cuyahoga County Local Rules of Court, dealing with pretrial procedure, applies. * * *" *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44, 45.

We recognize that both *Jones* and *Paugh & Farmer* involved instances of willful noncompliance. However, the existence and effect of prejudice resulting from noncompliance with the disclosure rules is of primary concern, not just the intent or motive involved. Appellee's conduct may well have been produced by neglect, a change in defense strategy or an inadvertent error.[2] Nevertheless, the trial court recognized it as a breach of duty giving rise to unfair surprise and concluded that the resulting prejudice could best be remedied by exclusion of the evidence. Civ. R. 26(E) and 37(B)(2)(b).[3]

---

[2] Additionally, although surprise is all but eliminated under the Civil Rules relating to discovery, an evidentiary basis has long been recognized for the exclusion of otherwise relevant evidence if its admission would result in "unfair surprise" disproportionate to its probative value. *Cottman* v. *Federman Co.* (1942), 71 Ohio App. 89, 91 [25 O.O. 435].

[3] Civ. R. 26(E) states in relevant part:

"A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:

"(1) A party is under a duty seasonably to supplement his response with respect to any question directly addressed to * * * (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify.

"(2) A party who knows or later learns that his response is incorrect is under a duty seasonably to correct the response.

"(3) A duty to supplement responses may be imposed by order of the court, agreement of the parties, or at any time prior to trial through requests for supplementation of prior responses."

Civ. R. 37(B)(2)(b) provides that the court may sanction a party by entering "[a]n order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting him from introducing designated matters in evidence * * *."

The purpose of these rules, as herein applicable, "is to prevent surprise to either party at the trial or to avoid hampering either party in preparing its claim or defense for trial. * * *" *Jones, supra,* Clifford F. Brown, J., dissenting, at 87. We determine that it was certainly not an abuse of discretion for the trial court to have concluded that, in order to effect a just result,[4] appellants' motion to exclude appellee's surprise expert witness must be granted.[5] See, also, *Moore v. Emmanuel Family Training Ctr.* (1985), 18 Ohio St. 3d 64.

------

See, also, Civ. R. 37(D) which states, *inter alia,* that "[i]f a party * * * fails * * * to serve answers or objections to interrogatories * * *, the court * * * on motion and notice may make such orders in regard to the failure as are just, and among others *it may take any action authorized under subsections (a), (b), and (c) of subdivision (B)(2)* of this rule. * * *" (Emphasis added.)

[4] Civ. R. 1(B) provides:
"These rules shall be construed and applied to *effect just results* by *eliminating delay, unnecessary expense* and all other impediments to the expeditious administration of justice." (Emphasis added.)
Pertinent to the Civil Rules concerning discovery, Civ. R. 26(A) declares,
"It is the policy of these rules (1) to preserve the right of attorneys to prepare cases for trial with that degree of privacy necessary to encourage them to prepare their cases thoroughly and to investigate not only the favorable but the unfavorable aspects of such cases and (2) to prevent an attorney from taking undue advantage of his adversary's industry or efforts."

[5] We note in passing that appellee's original appeal alleged that the trial court erred in granting appellants' motion *in limine.* As we noted in *State v. Maurer* (1984), 15 Ohio St. 3d 239, 259, quoting with approval *Redding v. Ferguson* (Tex. Civ. App. 1973), 501 S.W. 2d 717, 722, "* * * [t]he purpose of a motion in limine is to avoid the injection into the trial, of matters which are irrelevant, inadmissible and prejudicial. * * * It also serves the useful purpose of raising and pointing out before trial, certain evidentiary rulings that the Court may be called upon to make. By its very nature, when properly drawn, its grant cannot be error. It is not a ruling on evidence. It adds a procedural step prior to the offer of evidence.' "
*Maurer* at 259-260, fn. 14, quoting with approval from Palmer, Ohio Rules of Evidence, Rules Manual (1984), at 446, adds:
" 'Although extremely useful as a trial technique, *the ruling in a motion in limine does not preserve the record on appeal.* The ruling is as [sic] tentative, preliminary or presumptive ruling about an evidentiary issue that is anticipated but has not yet been presented in its full context. An appellate court need not review the propriety of such an order unless the claimed error is preserved by an objection, proffer, or ruling on the record when the issue is actually reached and the context is developed at trial.' " (Emphasis *sic.*)
In this case the record is devoid of any attempt by appellee to offer its expert witness at trial. Nor do we find where counsel made a proffer of the evidence or objected to its exclusion at the proper time during the trial.
Nevertheless, we find that in this case appellants' "motion in limine" expressly requested a final court order preventing introduction of the challenged evidence during the trial. Given the fact that the hearing on the motion was held immediately prior to trial, and that the motion was sustained, we believe that under the circumstances of this case appellee's failure to object did not constitute a waiver of its challenge. Accordingly, it is proper in this case for appellate review to consider the merits of the trial court's ruling. Cf. *State v. Davidson* (1985), 17 Ohio St. 3d 132, syllabus.

Accordingly, we reverse the court of appeals' decision on this issue and reinstate the trial court's judgment.

We now turn to the issue concerning the correctness of the award of prejudgment interest. We first note that such awards are within the sound discretion of the trial court. *Cincinnati Ins. Co.* v. *First Natl. Bank* (1980), 63 Ohio St. 2d 220, 226 [17 O.O.3d 136]. We have repeatedly held that "[t]he term 'abuse of discretion' connotes more than an error of law or of judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable. *Steiner* v. *Custer* (1940), 137 Ohio St. 448 [19 O.O. 148]; *Conner* v. *Conner* (1959), 170 Ohio St. 85 [9 O.O.2d 480]; *Chester Township* v. *Geauga Co. Budget Comm.* (1976), 48 Ohio St. 2d 372 [2 O.O.3d 484]." *State* v. *Adams* (1980), 62 Ohio St. 2d 151, 157-158 [16 O.O.3d 169]; *Blakemore* v. *Blakemore* (1983), 5 Ohio St. 3d 217, 219.

" '[A]n abuse of discretion involves far more than a difference in * * * opinion * * *. The term discretion itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. * * *' " *State* v. *Jenkins* (1984), 15 Ohio St. 3d 164, 222.

So tested, we find that it was not an abuse of discretion for the trial court to have concluded that the pretrial circumstances in this case revealed a lack of good-faith effort by appellee to settle this dispute.[6] There was ample evidence justifying the trial court's award of prejudgment interest in favor of appellants pursuant to R.C. 1343.03(C). See *Cox* v. *Fisher Fazio Foods, Inc.* (1984), 13 Ohio App. 3d 336, 337. However, the court of appeals correctly determined that interest could not be awarded for the period prior to the effective date of the statute. Cf. *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, 103-104.[7] Accordingly, upon remand, the

---

[6] Appellants' memorandum in support of their motion for prejudgment interest argued that appellee did not act in good faith during their various attempts to reach a settlement. Evidence was presented which documented appellants' attempts at reaching a compromise and appellee's perfunctory rejection of each. In some cases, appellee responded with an absurdly low offer. Through an affidavit and other documents, appellants produced evidence that appellee had delayed negotiations and caused appellants time and effort in assembling photographs, evidence of actual damages and other information only to unreasonably reject offers which constituted a reasonable basis for settlement discussions. The trial court obviously did not abuse its discretion when, after conducting a hearing, it found appellee's lack of good faith well-documented.

[7] R.C. 1343.03(C) (see fn. 1) is remedial in nature to the extent it provides procedures to remedy wrongs and abuses. However, its application does not hinge upon, nor does it seek to redress, the underlying tort. Rather, it seeks to remedy the subsequent misconduct of the losing party who fails to make a good-faith effort to settle the case. As such, the penalty imposed is an award of interest on the judgment in favor of the prevailing litigant.

This substantive benefit is to be "computed from the date the cause of action accrued to

trial court may compute prejudgment interest from July 5, 1982 "to the date on which the money is paid." R.C. 1343.03(C).

The judgment of the court of appeals is reversed in part and affirmed in part and the judgments of the court of common pleas are reinstated with direction that the prejudgment interest award be limited to an amount not inconsistent with this decision.

*Judgment accordingly.*

CELEBREZZE, C.J., SWEENEY, LOCHER and DOUGLAS, JJ., concur.

HOLMES, C. BROWN and WRIGHT, JJ., concur in part and dissent in part.

HOLMES, J., concurring in part and dissenting in part. I concur with the majority on the issue of prejudgment interest, but must dissent from the decision to uphold the motion *in limine* which excludes appellee's sole expert witness.

As the majority recognizes, this case does not involve a willful non-compliance or willful violation of Civ. R. 26(E), unlike *Jones v. Murphy* (1984), 12 Ohio St. 3d 84, or *Paugh & Farmer, Inc. v. Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44. Consequently, the query must be whether appellee's supplemental response within the ambit of Civ. R. 26(E)(1)(b) constituted unfair surprise to its party-opponent.

Unfair surprise occurs when a party is taken unawares by actions of opposing counsel on a material point or circumstance when such actions could not reasonably have been anticipated. While appellee's decision to call the expert witness was unexpected, there was no surprise by the subject matter of the testimony. Appellants called three expert witnesses who gave lengthy, detailed testimony on the issues of appellee's degree of negligence, the amount of resulting damage, and the need for corrective plastic surgery. Appellee's expert witness would have testified only on

---

the date on which the money is paid * * *." *Id.* In the instant case, the cause accrued prior to the effective date of the statute but the judgment was entered after the statute went into effect. In *Wilfong v. Batdorf* (1983), 6 Ohio St. 3d 100, 103-104, we observed that "* * * when a statute affects procedural rights, as opposed to substantive rights, the constitutional restraints on retrospective application are lifted. * * *" (Citations omitted.)

This statute not only provides the method by which the interest shall be computed, it also creates the right to have the unliquidated claim made subject to interest if the reasons for the assessment as stated in the statute can be met.

Since the statute is concerned with appellee's continuing misconduct (*i.e.*, lack of good faith in negotiating a settlement) until the time of judgment, and not the underlying tort, we believe it is appropriate to allow interest to be calculated from the effective date of the statute until "the money is paid." However, appellee's lack of good faith occurring prior to the effective date of the statute cannot be constitutionally penalized. Section 28, Article II of the Ohio Constitution.

these limited issues. Since there was no new subject matter in the proposed testimony, counsel for appellants claims that the mere introduction of new testimony would cause his clients added time and expense. However, mere inconvenience to counsel hardly rises to the level of either surprise or prejudice.

Civ. R. 26(E)(1)(b) requires counsel to "seasonably supplement" his responses to interrogatories relating to the identity of expert witnesses. Appellee's decision to use the testimony of one expert witness was made five days before trial. He informed opposing counsel immediately thereafter. Since there was no pretrial order violated, nor evidence of intentional "sand bagging," appellee's supplemental response can only be deemed "seasonable."

Finally, the trial court had available far less drastic remedies than exclusion of appellee's entire case in chief. He might simply have granted a continuance. Also, the trial court could have admitted the testimony subject to an objection at trial and, if appellants could prove an intentional delay on the part of appellee's counsel, the trial court could order reimbursement for time and expenses thereby expended. Civ. R. 37(B) and (C), 36(A) and 26(B). Instead, however, appellee was stripped of its only means of controverting appellants' various experts on vital issues within the litigation.

Therefore, in my view, the trial court's decision to exclude appellee's witness amounted to an abuse of discretion.

WRIGHT, J., concurs in the foregoing opinion.

CLIFFORD F. BROWN, J., concurring in part and dissenting in part. I concur in the judgment herein, except for the date from which prejudgment interest should be computed. The *per curiam* opinion states that "the trial court may compute prejudgment interest from July 5, 1982 'to the date on which the money is paid' * * *." This is contrary to the express language of R.C. 1343.03(C) which provides that interest on a judgment in a civil action based on tortious conduct and not settled by agreement of the parties "*shall* be computed from the date the cause of action accrued to the date on which the money is paid * * *." (Emphasis added.) See fn. 1 setting forth R.C. 1343.03(C) verbatim. The cause of action accrued on July 31, 1980, the date of the plaintiff's injury. The prejudgment interest statute was enacted effective July 5, 1982. If plaintiffs have a right to an award of prejudgment interest, a right to such award having been recognized by the trial court by making an award, the statute in no way authorizes this court or the court of appeals to omit prejudgment interest for the interval between the date the cause of action accrued, July 31, 1980, and the effective date of the statute, July 5, 1982.

This court in this case recognizes that R.C. 1343.03(C), the statute providing for prejudgment interest, is a remedial statute and as such is ap-

plicable to all negligence actions tried after its effective date regardless of when the cause arose. See fn. 7 herein. However, this court cites and misapplies *Wilfong* v. *Batdorf* (1983), 6 Ohio St. 3d 100, regarding the application of a remedial statute to a cause of action arising before its effective date. Contrary to the last sentence of fn. 7 herein, we did *not* recognize in *Wilfong* that the statutory benefits conferred are only available from the date of the statutory enactment. There is not a word or phrase in *Wilfong* that so intimates. Quite the opposite. We stated in *Wilfong* that "when a statute affects procedural [remedial] rights, as opposed to substantive rights, the constitutional restraints on retrospective application are lifted. * * *" (Citations omitted.) *Id.* at 103-104. That means all the way. All the way in this case is the date of the injury, July 31, 1980. The court of appeals cites no authority and advances no reasoning to support its erroneous determination that "upon the authority of *Wilfong* v. *Batdorf, supra,* * * * [the trial] court erred in awarding interest from the date of [the] injury * * *."

I concur in the judgment of this court to uphold the motion *in limine* which excludes the testimony of appellee's sole expert witness. Those who disagree with this decision today and others like-minded are quick to make observations that a continuance here would not have prejudiced appellants in a substantial way or that "[a]fter all, whether reviewing the actions of a plaintiff or defendant, it should be the primary purpose of our rules to allow both parties to have their day in court," or that "there was no surprise by the subject matter of the testimony," or that the trial court had available "far less drastic remedies" than exclusion of testimony such as granting a continuance, and that as a consequence the exclusion of expert testimony was an abuse of discretion.

These same valid criticisms could have been and should have been voiced by the majority of this court, but were not, in *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, where this court unjustly sanctioned the exclusion of expert witness testimony offered by the plaintiffs in the *Jones* case. Those who dissent today in substance advocate a double standard of justice, one for the defendant's proposed expert in this case, and a different standard for the proposed experts for the plaintiffs in *Jones.*

If the majority of this court would overrule *Jones* v. *Murphy, supra,* and *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44, thus eradicating the bad law contained therein, I would join those who dissent today pertaining to the judgment excluding the testimony of appellee's sole expert witness. See *Jones* v. *Murphy, supra,* dissent at 86-88. So long as *Jones* and *Paugh & Farmer* remain unmodified as the beacons of injustice that we must apply, then only the result reached today by the majority is justified.

Accordingly, for the foregoing reasons, I dissent from that portion of the judgment in this case which fails to award prejudgment interest to plaintiffs for the period from July 31, 1980 to July 5, 1982.

WRIGHT, J., concurring in part and dissenting in part. I concur with the majority on the issue of prejudgment interest and I concur in Justice Holmes' dissent. I would also like to make the following comments.

The majority acknowledges that both *Jones* v. *Murphy* (1984), 12 Ohio St. 3d 84, and *Paugh & Farmer, Inc.* v. *Menorah Home for Jewish Aged* (1984), 15 Ohio St. 3d 44, involved "instances of noncompliance." *Jones* and *Paugh & Farmer* both recognize that Civ. R. 37 permits the exclusion of expert testimony as a sanction for the violation of Civ. R. 26(E)(1)(b). Both cases, however, are distinguishable from the instant case. In both *Jones* and *Paugh & Farmer,* the trial court expressly found an intentional or willful noncompliance with Civ. R. 26(E). As noted by the majority, the record in *the instant case does not reveal a noncompliance.* In *Paugh & Farmer,* the party seeking admission of the expert witness testimony did not comply with an established expert report filing deadline. No such deadline was established in the instant case. Most importantly, in both *Jones* and *Paugh & Farmer,* there was evidence of unfair surprise. The record in the instant case discloses no surprise sufficient to warrant the "severe sanction" of the exclusion of evidence. See *Nickey* v. *Brown* (1982), 7 Ohio App. 3d 32, 34.

Appellants argue that they suffered unfair surprise because they claim that the issue that would have been covered by appellee's proposed expert was previously uncontested and was not developed in the examination of appellants' experts. A review of the record illustrates that these claims are incorrect. Appellee's expert would have testified on the following issues: (1) the role of the permanent wave solutions applied to appellant in producing allergic reactions; (2) the effect of these solutions on human skin; and (3) the necessity of surgery to correct the injuries suffered by appellant. Appellants in their brief concede that these matters were in issue "from the outset" of the case. Further, each of these issues was essentially examined by appellants' counsel in the direct examination of appellants' medical witnesses. Thus, the surprise suffered by appellants would have been minimal and could have been dealt with in a manner less severe than exclusion.

Civ. R. 37(B)(2), the rule apparently relied on by the trial court in excluding appellee's expert, provides that if a party fails to comply with discovery procedures, the court "may make such orders in regard to the failure as are just." The trial court in the instant case excluded the testimony of appellee's only witness. I strongly support the view of the court of appeals that "the peremptory application of the draconian remedy that resulted in the emasculation of * * * [appellee's] case and denied it a full and effective hearing upon those limited issues" was unwarranted. Any problems presented by the testimony of appellee's expert could have been corrected by less severe measures, such as granting a brief continuance to allow appellants to depose appellee's expert or even monetary sanctions coupled with a continuance of the proceeding with the caveat

that appellants could renew their motion when and if surprised by the testimony of the witness. A continuance could not have prejudiced appellants in any substantial way and would have allowed appellee to present its case. After all, whether reviewing the actions of a plaintiff or defendant, it should be the primary purpose of our rules to allow both parties to have their day in court. Thus, for the reasons discussed, the trial court's exclusion of the expert constituted an abuse of discretion and reversible error. Accordingly, I must respectfully dissent.