**OHIO STATE BOARD OF CHIROPRACTIC EXAMINERS, Appellee,**

v.

**FULK, Appellant.**

[Cite as *Ohio State Bd. of Chiropractic Examiners v. Fulk* (1992), 84 Ohio App.3d 483.]

Court of Appeals of Ohio,
Franklin County.

No. 92AP–814.

Decided Dec. 22, 1992.

484

*Paul F. Fulk, D.C., pro se.*

*Lee Fisher,* Attorney General, and *Gregg B. Thornton,* Assistant Attorney General, for appellee.

McCORMAC, Judge.

The Ohio State Chiropractic Examining Board ("board"), appellee, gave notice to Paul F. Fulk, D.C., appellant, of charges that he had knowingly aided, assisted, procured, or advised Dorothy Braam, an unlicensed individual, to practice chiropractic medicine, contrary to R.C. 4734.10(E) and Ohio Adm.Code 4734–1–16(F)(4). The matter was heard by the board, which found that Dr. Fulk had referred three patients to Dorothy Braam between March 1990 and April 1991 for colonic irrigation as part of treatment for the patients' care and that she performed colonic irrigations without the required supervision. The board found that Braam was not licensed to perform that procedure. The board further found that colonic irrigation is within "chiropractic practice" as defined by R.C. 4734.09 and Ohio Adm.Code 4734–1–15. Thus, the board found that appellant had violated R.C. 4734.10(E) and Ohio Adm.Code 4734–1–16(F)(4) and suspended him for one year with ten months stayed.

Dr. Fulk appealed to the Court of Common Pleas of Franklin County, which affirmed the order of the board, finding that it was based upon reliable, substantial and probative evidence and was in accordance with law.

Dr. Fulk appeals to this court, asserting the following assignments of error:

"1. The trial court erred in that it failed to give the case due consideration on its merits.

"2. The trial court erred in that it failed to find that the Board of Chiropractic Examiners did not have jurisdiction over the subject matter at bar.

"3. The trial court erred that it affirmed a quasi-legislative action of the board, when the board is to hear only quasi-judicial issues.

"4. The trial court erred in that it failed to find that the administrative order of the Board of Chiropractic Examiners was not based upon or supported by reliable, substantial and probative evidence."

Appellant's assignments of error are combined for discussion as they are interrelated.

There is no doubt that the state proved that Dr. Fulk referred at least three of his patients to Dorothy Braam for performance of colonic irrigations and that she was not licensed to perform this procedure, if it be a chiropractic procedure, and that she was not supervised while performing the colonic irrigations.

The primary issue is whether a colonic irrigation is a chiropractic procedure subject to regulation by the board. Dr. Fulk argues that the evidence conclusively shows that the procedure was only an enema, which anyone can administer, and was not a procedure subject to regulation by the board. It is first necessary to examine the testimony to see what actually was performed.

Two witnesses testified that they had not only been referred by Dr. Fulk to Dorothy Braam for colonic irrigation treatments but that they had actually gone to her for treatment, using the map provided by Dr. Fulk's office to show the route from Columbus to Cincinnati. Elizabeth Benson testified that she saw Dorothy Braam four times for colonic irrigations, which were performed in the basement of Braam's home. Dr. Fulk's map suggested a $35 donation in cash only. Benson paid $35 to $45 per treatment. She said that there was a device to apply pressure to the water and a tube was inserted in her rectum. While Benson went to Dr. Fulk for back adjustments, she was told by him that she had an immune system problem and that he knew she needed colonic irrigation treatments, which resulted in the reference to Braam.

Christopher Blanchard testified that he saw Dr. Fulk for treatment of eczema, for which he had been told that Fulk provided effective treatment. He said that Dr. Fulk recommended colonic irrigation, which was described as a "roto-rooter" process that could clear up his skin and get his colon cleaned out. He saw Dorothy Braam twice, going from Columbus to Cincinnati using the map provided by Dr. Fulk's office. He said that she placed a tube in his rectum and turned a machine on. He said that Dr. Fulk described the process as involving a tube

coming out of the stomach or colon from which he could see the "junk" being eliminated.

Dr. Fulk offered no testimony and the state was unable to serve a subpoena on Dorothy Braam. State exhibits showed that Dorothy Braam was not licensed as a chiropractor, and did not hold a certificate to practice medicine or surgery, or a certificate to practice massage. Braam previously held a license to practice massage, which was surrendered in 1983 to the State Medical Board.

■ The procedure described to Dr. Fulk's patients was labeled a colonic irrigation, not an enema. Dr. Plato, an expert witness, said that an enema is not the same as a colonic irrigation, which is under pressure, not just by gravity, as in the case of an enema, and that, in a colonic irrigation, the fluid returns through a tube rather than naturally. Benson's and Blanchard's testimony concerning the procedure can reasonably be construed to be a colonic irrigation as represented to them by Dr. Fulk, rather than just an enema. Hence, there was reliable, substantial and probative evidence to support the fact that a colonic irrigation was performed by Dorothy Braam. The evidence also supports a finding that Dorothy Braam was not licensed to perform colonic irrigations and that there was no supervision of her. Parenthetically, the state attempted to subpoena Braam as a witness, but was unable to obtain service. Appellant claims that she was an essential witness who could have clarified what took place, but he made no effort to obtain her testimony.

The next question is whether colonic irrigations were subject to the jurisdiction of the board as being within the realm of chiropractic practice.

Dr. Robert Plato, a chiropractor for eleven years, testified that his chiropractic college offered a regular course in colonic irrigation. He described colonic irrigation as a procedure which is "a cleansing of the colon or bowel with a liquid, normally water, many times under pressure." His opinion was that colonic irrigation falls within the scope of chiropractic practice as it is hygienic and nutritional. He further stated that it comes within the scope of chiropractic practice because chiropractors may use such diagnostic and treatment procedures as are taught by board approved chiropractic colleges, such as the one from which he graduated. While Dr. Plato's testimony may have been somewhat suspect because he personally had never used colonic irrigations in his practice, it was still within the realm of his expertise because of his training in chiropractic college. Furthermore, there was no testimony refuting what he stated.

The scope of chiropractic practice is set forth by statute and rule. R.C. 4734.09 defines the "practice of chiropractic," stating:

" * * * [P]ractice of chiropractic' or 'practice as chiropractor' means utilization of the relationship between the musculo-skeletal structures of the body, the spinal

column and the nervous system, in the restoration and maintenance of health, in connection with which patient care is conducted with due regard for first aid, hygienic, nutritional, and rehabilitative procedures * * *."

From the testimony of the patients, Dr. Fulk, who was treating his patients primarily for musculo-skeletal conditions, advised them that for the treatment to be complete and successful they also needed colonic irrigations. Thus, the colonic irrigations were sufficiently related to hygienic and nutritional procedures in conjunction with musculo-skeletal treatment that it was not an abuse of discretion for the board to find that the procedure fell within chiropractic practice. Additionally, R.C. 4734.09 lists procedures which chiropractors are prohibited from performing; the restricted procedures do not include colonic irrigations. Ohio Adm.Code 4734–1–15(B) further defines the scope of practice of a chiropractor, stating:

"The practice of chiropractic will include and permit the use of such diagnostic and treatment procedures as are taught by Board approved chiropractic colleges except as prohibited by law and/or the Rules and Regulations of this Board."

As previously stated, the sole testimony was that colonic irrigations are taught by a board-approved chiropractic college; there was no testimony concerning what other such colleges taught.

Ohio Adm.Code 4734–1–16, entitled "Conduct of Practice," provides:

"(F) It shall be considered unprofessional or unethical conduct and grounds for discipline if any licensee: * * * (4) knowingly aids, assists, procures or advises an unlicensed person to practice chiropractic contrary to this chapter or rules of the board * * *."

The common pleas court did not abuse its discretion in affirming the board's finding that there was reliable, substantial and probative evidence that Dr. Fulk was subject to discipline for referring patients to an unlicensed and unsupervised person for performing chiropractic procedures, to wit, colonic irrigations.

The discipline accorded Dr. Fulk was properly ordered pursuant to former R.C. 4734.10(E) (now R.C. 4734.10[A][5]), which provides that the Chiropractic Examining Board may revoke or suspend for a limited period the license of any chiropractor for violation of any of the rules adopted by the board governing the practice of chiropractic.

■ Appellant also argues that the board exceeded its authority because it did not have jurisdiction over the subject matter at bar. For the reasons previously stated, that contention is not well taken. The rules adopted by the board were not in conflict with the applicable statutes and were in accordance with the

authority granted the board to adopt rules. There was no improper rulemaking by adjudication. The board merely interpreted the existing statutes and rules.

▮ Our test in reviewing the judgment of the common pleas court is whether the court abused its discretion. *Angelkovski v. Buckeye Potato Chips Co.* (1983), 11 Ohio App.3d 159, 11 OBR 242, 463 N.E.2d 1280. There was no abuse of discretion, as the findings of the board were supported by sufficient evidence so that the action of the common pleas court in affirming the board was not unreasonable, arbitrary or unconscionable. See *Huffman v. Hair Surgeon, Inc.* (1985), 19 Ohio St.3d 83, 19 OBR 123, 482 N.E.2d 1248.

Appellant's assignments of error are overruled, and the judgment of the trial court is affirmed.

*Judgment affirmed.*

BOWMAN and PEGGY BRYANT, JJ., concur.