DECISION AND JUDGMENT ENTRY
{¶ 1} This matter is before the court on appeal from a judgment of the Huron County Court of Common Pleas in a foreclosure action denying the lienholder's motion to set aside a sale.
 {¶ 2} Appellant, Chase Manhattan Mortgage Corporation, was the first lienholder, after taxes and costs, of a premises owned by Lisa Krebs-Koan[1] and Jeff Schneider, located at 6 Hickory Street in Huron County, Ohio. After default, a foreclosure was ordered and a sale was scheduled for May 7, 2001. According to documentation in the case file, the sale was advertised in accordance with R.C. 2329.26 and R.C. 2329.27. The property was appraised at $68,000.
 {¶ 3} Appellant's legal counsel, Dennis Reimer Company ("Reimer Company"), routinely employed attorney George Ford as its purchasing representative at foreclosure sales in Huron County. Appellant claims that Reimer Company faxed biding instructions to Ford to purchase the Hickory Street property on behalf of appellant. Appellant further claims that Ford received the cover page of that fax but not the bidding instructions, and that Ford inadvertently bid on a different property. However, Ford stated in an affidavit that he "never received any verbal or written communication from Chase Manhattan Mortgage asking him to represent them at said sale." Ford attended the May 7, 2001 sale and successfully bid on a different property for a different mortgage company. Ford did not represent appellant at the sale, and did not bid on the Hickory Street property.
 {¶ 4} Appellee, Robert W. Gentzel, was the only party to bid on the Hickory Street property, and he purchased it for the minimum bid of $45,334. A sheriff's return reflecting that he was the successful bidder was filed May 11, 2001. The trial court issued a judgment entry confirming the sale and ordering distribution on July 17, 2001, based on incorrect information submitted by Reimer Company. The entry incorrectly stated that appellant was the purchaser of the Hickory Street property for $46,000.
 {¶ 5} Appellant filed a motion to set aside the sale on December 19, 2001, claiming that the sale would be contrary to the "primary purpose and goal of a foreclosure sale: to protect the interests of the mortgagor-debtor." Appellee filed a memorandum in opposition in which he argued that "all of the errors giving rise to Plaintiff's dilemma are directly traceable to Plaintiff and its agents." Appellee went on to note that "the bank has repeatedly committed errors in this case," including not retaining anyone to appear at the sale and waiting seven months after the sale to attempt to vacate it.
 {¶ 6} On January 11, 2002, appellee filed a motion for a judgment entry nunc pro tunc to reflect that he, not appellant, was the purchaser of the property. Appellee also filed a motion for appointment of a receiver to inspect the property for damage weekly and make any repairs necessary through the winter months.
 {¶ 7} Appellant filed a supplemental brief January 18, 2002 in which it stated that it would lose $35,000 if the sale was confirmed. Appellant stated that it stood to recoup the entire indebtedness, some $77,000, on the Hickory Street property if it could obtain the title and transfer it to the secretary of Housing and Urban Development, because the loan was insured by the Federal Housing Authority.
 {¶ 8} An evidentiary hearing was held January 11, 2002. Appellant presented the testimony of Marie Maynard, a foreclosure paralegal
 {¶ 9} for Reimer Company, who claimed she notified Ford's office of the sale one week before it was to be held and was told Ford could attend. Maynard said she faxed the bidding instructions for the Hickory Street property to Ford's office at approximately 4 p.m. on Friday, May 4, 2001, instructing Ford to bid up to $77,785. Maynard also testified that she called Ford for the results on the day of the sale, Monday, May 7, 2001, and Ford told her appellant had purchased the property for $46,000. Maynard said she became aware that appellant had not purchased the property when the sheriff's office contacted her approximately two months later. Maynard then contacted appellee on her employer's behalf to see if something could be "worked out" regarding the property.
 {¶ 10} Attorney Dennis Reimer ("Reimer") of Reimer Company took the stand for the purposes of cross-examination. Reimer admitted that his office had not contacted the sheriff's or the clerk of court's office to find out what had happened at the sale, and that he had not seen a copy of the sheriff's return listing appellee as purchaser until the day of trial.
 {¶ 11} Carol Smith, a civil process clerk at the Huron County Sheriff's Office, testified that upon discovering the incorrect purchaser and amount on the confirmation order Reimer had submitted, she contacted Reimer Company five times between July 24, 2001 and October 25, 2001, asking that the information be changed. Smith said that she was told Reimer Company was "going to check on it" and was waiting for information from Ford, and that Reimer would contact her. Smith testified that Reimer never called her back.
 {¶ 12} Ford testified that he was unaware of a fax from Reimer Company until he received a call from them in November, 2001. Ford said that when he looked up the fax he saw a cover page from Reimer Company, which did not contain any information regarding bidding on the property in question, and an accompanying page on which there were four heart shapes, but no text. Ford said that he thought Reimer Company's fax had crashed his computer. Ford went on to testify that on the day of the sale he reported to his client for whom he had purchased a different property for $46,000. However, when he arrived back in his office, his secretary said the client had called and asked for the results of the sale again. Ford speculated on the stand that the second call may have been from Reimer Company, and stated "I did not do the phone call myself, so I don't know."
 {¶ 13} The court issued its decision and judgment entry January 29, 2002, denying appellant's motion to set aside the sale and ordering the sale confirmed and the record corrected to reflect appellee as purchaser. The court noted that appellant's counsel had been "extremely dilatory" in handling the case, and declared, "all the fault lay on Plaintiff's counsel and people acting on his behalf." The court denied appellee's request for appointment of a receiver, and suggested he could bring an action for damages later if the property suffered harm while confirmation of the sale was pending.
 {¶ 14} Appellant appeals that judgment and sets forth the following assignment of error:
 {¶ 15} "The trial court erred in not granting the motion to set aside the sale and ordering confirmation."
 {¶ 16} "Whether a judicial sale should be confirmed or set aside is within the sound discretion of the trial court." Ohio Sav. Bank v. Ambrose
(1990), 56 Ohio St.3d 53, 55, citing Michigan Mtge. Corp. v. Oakley (1980), 68 Ohio App.2d 83 and Reed v. Radigan (1884), 42 Ohio St. 292, 294. Therefore, the question becomes whether the trial court abused its discretion under the circumstances.
 {¶ 17} The Ohio Supreme Court defines abuse of discretion as an attitude on the part of the trial court that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon, Inc. (1985), 19 Ohio St.3d 83,87. An abuse of discretion involves far more than a difference in opinion. "In order to have an `abuse' in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias." Id.
 {¶ 18} Appellant cites to a number of cases in support of its position that the Hickory Street sale should be set aside because appellant stands to lose $32,000 if it is not. Indeed, courts in Ohio examine the difference between what property sells for at a judicial sale and the amount of indebtedness to the mortgagor when determining whether to set aside a sale. American Sav. Loan Assn. v. Taylor (July 31, 1985), Butler App. No. CA85-02-015; Oakley, supra. However, courts consider other factors as well, including the timeliness of the motion to set aside and the likelihood that a higher bid could be received by vacating a sale.
 {¶ 19} In the majority of the cases cited by appellant, the moving party acted to set aside sale in a timely manner, ranging from immediately after the sale to two weeks afterward. See Union Sav. Assn. v. FloydBlackwell, Inc. (Jan. 14, 1981), Lorain App. No. 3083, 3084; Oakley, supra; Merkle v. Merkle (1961), 116 Ohio App. 370, 371. The movants in many of these cases also produced evidence that setting aside the sale would result in a higher bid, and thus more money for the mortgagor. SeeTaylor, supra; Merkle, supra.
 {¶ 20} Based on the facts of this case, the trial court did not abuse its discretion in ordering confirmation of the sale to appellee. Appellant did not have a representative present at the foreclosure sale, which was advertised in accordance with law. Appellant's counsel did not submit a confirmation order until two months after the sale, and never returned calls from the sheriff's office or checked the sheriff's return once he was notified of inaccuracies in the order he submitted. And appellant did not file a motion to set aside sale until six months after the date of the sale.
 {¶ 21} Furthermore, there was no evidence that setting aside the sale would have protected appellant in this case. The trial court noted in its decision and judgment entry that:
 {¶ 22} "Plaintiff's counsel prepared the order confirming the sale in the Plaintiff in the amount of $46,000.00, without ever questioning the sale price. He at that time was not concerned about the large deficiency created for the mortgagor-debtor. There was no testimony that Mr. Ford was instructed to start the bidding at higher than the minimum bid of $45,334.00, for which the property was sold to Mr. Gentzel. Exhibit No. 2, the bidding instructions that were faxed to Mr. Ford, but not received, instructed him to start at the minimum bid. It was no doubt the desire of Plaintiff to obtain the property at the minimum bid, if possible. If the sale were vacated, it would be pure speculation to conclude that the property would be sold at anything other than the minimum bid."
 {¶ 23} Although testimony revealed that it was customary for Reimer Company to fax bidding instructions to Ford "very close to the [date of the] sale," we note that this practice, along with the fact that neither party ever confirmed or questioned the fax, contributed in large part to the confusion in this case, and therefore we strongly discourage such practice.
 {¶ 24} On consideration whereof, appellant's sole assignment of error is found not well-taken, and the judgment of the Huron County Court of Common Pleas is affirmed. Costs are assessed to appellant.
JUDGMENT AFFIRMED.
Melvin L. Resnick, J., James R. Sherck, J., and Mark L. Pietrykowski,P.J., CONCUR.
[1] Although Ms. Krebs-Koan's name appears as appellee in the case caption, we note that she presents no issues on appeal. The purchaser of the property at the foreclosure sale, Robert Gentzel, has presented issues on appeal, and we therefore refer to him as "appellee".