OPINION
{¶ 1} This is an appeal from a trial ruling of the Stark County Court of Common Pleas, wherein the appellant was denied the presentation of testimony of a medical witness who was originally designated a witness by an adverse party.
 STATEMENT OF THE FACTS AND CASE {¶ 2} Appellant, Dennis McKernan individually and as Administrator of the Estate of Audrey McKernan, filed this action alleging medical negligence in his wife's treatment which was the proximate cause of her death.
 {¶ 3} The defendants in the complaint were Massillon Community Hospital, Dr. Edward Schirack, Clinical Gastroenterology, Inc., Dr. Wayne Lutzke, Family Practice Associates, Wales Professional Center, Dr. David Scott, Dr. Richard Kessler, Dr. Harlow Schmidt, Emergency Medical Physicians, Dr. Walter Telesz and Starl County Surgeons.
 {¶ 4} Dr. Pogorelec was replaced by Dr. Mark Simon.
 {¶ 5} Massillon Community Hospital, Dr. Shay, Wales Professional Center, Dr. Scott, Dr. Kessler, Dr. Schmidt, Emergency Medical Physicians, Dr. Telesz and Stark County Surgeons were dismissed as discovery proceeded leaving Drs. Simon, Lutzke, Family Practice Associates, Dr. Schirack, Clinical Gastroenterology, Inc. and Dr. Stallings as trial defendants.
 {¶ 6} Per case management order of April 13, 2000, appellants were required to identify experts by September 11, 2000, with appellees (and other defendants) to provide their experts by November 27, 2000.
 {¶ 7} Dr. Joel Bennett (a hematologist) was listed by Drs. Simon and Lutzke and Family Practice Associates, Inc.
 {¶ 8} Due to additional medical expert identification, motions and leave to rebut, the trial was rescheduled to January 7, 2002 (trial order of March 22, 2001).
 {¶ 9} Discovery cut off was set by the trial court for December 3, 2001 (Order of November 26, 2001).
 {¶ 10} Not withstanding this date, Dr. Stallings identified Dr. Villa on December 6, 2001 and the parties continued taking depositions.
 {¶ 11} Appellants were further ordered to file a final list of experts by December 11, 2001. Among those included on this listing filed December 6, 2001 was Dr. Bennett.
 {¶ 12} His deposition was taken by appellants on December 20, 2001.
 {¶ 13} Other depositions by appellees (and other defendants) were also taken beyond the established discovery cutoff. (Dr. Green — December 17, 2001, Dr. Villa — December 18, 2001, Dr. Tupa — December 19, 2001, Dr. Tupa — redeposed January 3, 2002).
 {¶ 14} Each defendant was represented at the deposition of Dr. Bennett and his deposition was filed with the trial court by appellant and on behalf of Dr. Schirack.
 {¶ 15} Drs. Simon, Lutzke and their corporation, Family Practice Associates, Inc. settled with appellants and were dismissed. These were the defendants who had listed Dr. Bennett initially as an expert they intended to call.
 {¶ 16} Dr. Bennett's deposition testimony was possibly adverse to Dr. Stallings on the standard of care issue. A motion by Dr. Stallings was filed on January 4, 2002 to exclude utilization of Dr. Bennett's testimony.
 {¶ 17} Arguments on such exclusion motion were heard on each of the first three days of trial. (T. Vol. 1 at p. 25-35, Vol. 3 at p. 261-299, Vol. 4 at p. 153-180).
 {¶ 18} The trial court initially was inclined to exclude Dr. Bennett's testimony but then ruled that appellant's could not use Dr. Bennett's deposition but live testimony would be allowed. (T. Vol. 3 at p. 297). After such witness was brought from out of state, the trial court reversed such prior decision and prevented his testimony. (T. Vol. 4 at p. 171-180).
 {¶ 19} His deposition was appropriately proffered.
 {¶ 20} Civil Rule 32 and its interpretation is involved in the issue raised by the Assignment of Error.
 {¶ 21} Subsections (A), (B) and (C) of such rule state:
{¶ 22} "Civ R 32 Use of depositions in court proceedings
 {¶ 23} "(A) Use of depositions. Every deposition intended to be presented as evidence must be filed at least one day before the day of trial or hearing unless for good cause shown the court permits a later filing.
 {¶ 24} "At the trial or upon the hearing of a motion or an interlocutory proceeding, any part or all of a deposition, so far as admissible under the rules of evidence applied as though the witness were then present and testifying, may be used against any party who was present or represented at the taking of the deposition or who had reasonable notice thereof, in accordance with any one of the following provisions:
 {¶ 25} "(1) Any deposition may be used by any party for the purpose of contradicting or impeaching the testimony of deponent as a witness.
 {¶ 26} "(2) The deposition of a party or of anyone who at the time of taking the deposition was an officer, director, or managing agent, or a person designated under Rule 30(B)(5) or Rule 31(A) to testify on behalf of a public or private corporation, partnership or association which is a party may be used by an adverse party for any purpose.
 {¶ 27} "(3) The deposition of a witness, whether or not a party, may be used by any party for any purpose if the court finds: (a) that the witness is dead; or (b) that the witness is beyond the subpoena power of the court in which the action is pending or resides outside of the county in which the action is pending unless it appears that the absence of the witness was procured by the party offering the deposition; or (c) that the witness is unable to attend or testify because of age, sickness, infirmity, or imprisonment; or (d) that the party offering the deposition has been unable to procure the attendance of the witness by subpoena; or (e) that the witness is an attending physician or medical expert, although residing within the county in which the action is heard; or (f) that the oral examination of a witness is not required; or (g) upon application and notice, that such exceptional circumstances exist as to make it desirable, in the interest of justice and with due regard to the importance of presenting the testimony of witnesses orally in open court, to allow the deposition to be used.
 {¶ 28} "(4) If only part of a deposition is offered in evidence by a party, an adverse party may require him to introduce all of it which is relevant to the part introduced, and any party may introduce any other parts.
 {¶ 29} "Substitution of parties pursuant to Rule 25 does not affect the right to use depositions previously taken. When another action involving the same subject matter is or has been brought between the same parties or their representatives or successors in interest, all depositions lawfully taken in the one action may be used in the other as if originally taken therefor.
 {¶ 30} "(B) Objections to admissibility. Subject to the provisions of subdivision (D)(3) of this rule, objection may be made at the trial or hearing to receiving in evidence any deposition or part thereof for any reason which would require the exclusion of the evidence if the witness were then present and testifying. Upon the motion of a party, or upon its own initiative, the court shall decide such objections before the deposition is read in evidence.
 {¶ 31} "(C) Effect of taking or using depositions. A party does not make a person his own witness for any purpose by taking his deposition. The introduction in evidence of the deposition or any part thereof for any purpose other than that of contradicting or impeaching the deponent makes the deponent the witness of the party introducing the deposition, but this shall not apply to the use by an adverse party of a deposition as described in subdivision (A)(2) of this rule. The use of subdivision (A)(3)(e) of this rule does not preclude any party from calling such a witness to appear personally at the trial nor does it preclude the taking and use of any deposition otherwise provided by law. At the trial or hearing any party may rebut any relevant evidence contained in a deposition whether introduced by him or by any other party."
 {¶ 32} The sole Assignment of Error is:
 ASSIGNMENT OF ERROR {¶ 33} "The trial court erred in excluding appellant's use of an initially adverse expert witness."
 {¶ 34} As to the Assignment of Error we must examine the trial court's ruling and reasons therefore under the guidelines applicable to abuse of discretion. In order to find an abuse of discretion, we must determine that the trial court's decision was unreasonable, arbitrary or unconscionable and not merely an error of law or judgment. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217. We must look at the totality of the circumstances in the case sub judice and determine whether the trial court acted unreasonably, arbitrarily or unconscionably.
 {¶ 35} In Volume 4 pages 171-180, the trial court listed several reasons requiring exclusion of the testimony of Dr. Bennett. The exclusion was not utilized as a sanction for violation of Civ.R. 36 pursuant to Civ.R. 37 as was approved in Huffman v. Hair Surgeons, Inc.
(1995), 19 Ohio St.3d 83.
 {¶ 36} Initially, the trial court in indicating (T. Vol. 3 at p. 164, 165) a refusal to permit the testimony of Dr. Bennett, referencedHampton v. Bethesda Hospital (Jan. 17, 1990), Hamilton App. No. C-880653 and Smith v. Stark County Neurologists, Inc. (May 15, 1991), Stark App. No. 8152.
 {¶ 37} Subsequently, after agreeing to permit live testimony by such Doctor and rescinding such after appellant had produced the Doctor, the trial court expressed concern that his use was "trial by ambush". (T. Vol. 3 at p. 171, 175).
 {¶ 38} Next, the trial court stated that: (A) interrogatories were not updated to list Dr. Bennett, (B) Dr. Bennett was not identified by the expert deadline for appellants, (C) the Doctor's deposition was taken after discovery cut-off pursuant to the case management order. (T. Vol. 3 at p. 175-178).
 {¶ 39} In addressing such issues, we are aware that the trial court had previously granted leave to appellants as to Dr. Perkins and continued the trial date. We understand the trial court's desire to bring this issue to conclusion without further delay.
 {¶ 40} The Hampton and Smith cases each reversed the trial court's allowance of testimony by unnamed experts in reliance on Civ.R. 26.
 {¶ 41} Such rule states in subsection (E)(1):
 {¶ 42} "(E) Supplementation of responses
 {¶ 43} "A party who has responded to a request for discovery with a response that was complete when made is under no duty to supplement his response to include information thereafter acquired, except as follows:
 {¶ 44} "A party is under a duty seasonably to supplement his response with respect to any question directly addressed to (a) the identity and location of persons having knowledge of discoverable matters, and (b) the identity of each person expected to be called as an expert witness at trial and the subject matter on which he is expected to testify."
 {¶ 45} These cases differ from the one sub judice as appellants did seasonably supplement by listing Dr. Bennett as an expert on December 6, 2001 before taking his deposition on December 20, 2001.
 {¶ 46} It is true that the taking of such deposition was after the deadline of September 11, 2000 set by prior order. However, this did not differ from the practice engaged in by other defendants, as depositions of Drs. Green, Villa and Tupa were also taken subsequent to the cut-off date.
 {¶ 47} In addressing the concerns of the trial court as to "trial by ambush", we must disagree. Each of the counsel for defendants including Dr. Stallings, had Dr. Bennett's report and was represented at his deposition and were aware therefore of his testimony. They were therefore not surprised nor "ambushed" by his opinions although such opinions may have been undesirable.
 {¶ 48} As to lateness in listing such Doctor and taking his deposition beyond the cut-off order, appellants could not be aware of the complete nature of his opinions and the basis thereof prior to his deposition. It is not unusual to obtain information from a witness or expert, medical or otherwise, during a deposition which supports one's position or weakens the defensive position.
 {¶ 49} While the trial court clearly possesses the power to establish appropriate discovery cut-off and expert listing dates, such should be utilized in the context of the overall discovery process. Here, the parties, without objections, were proceeding with depositions beyond established dates. While this may have been in non-compliance with the trial court's prior orders, it would not be a basis for denying the deposition utilization by one party as opposed to others.
 {¶ 50} The real issue is whether there is justification for the use of Dr. Bennett's testimony as he was originally listed by a dismissed defendant. Obviously, a defendant who possibly might be adversely affected would do everything legally permissible to obtain exclusion.
 {¶ 51} There is no prevention under Civ.R. 32 to the use of an opponent's deposition. The only obvious result is that, in using such in a party's case in chief, the deposed witness becomes the witness of the user. See Civ.R. 32(C), Buchman v. Wayne Trace Local Dist. Bd. of Ed.,73 Ohio St.3d 260, 1995-Ohio-136, Hunt v. Crossroads Psychiatric andPsycology Centers (Dec. 6, 2001) 8th Dist No. 79120, Dimarco v.Bernstein (Oct. 13, 1988) Cuyahoga App. No. 54406.
 {¶ 52} As stated by appellee Stallings, "Certainly, one who videotapes their own expert but does not like the results can expect that deposition to be used against him." This is the real issue presented. Appellee Stallings was represented at Dr. Bennett's deposition, was concerned by such testimony and did not wish it to be used against him. A continuance could have been requested, if the need were established.
 {¶ 53} The fact that the deposition was taken by a dismissed party is immaterial. Hunt supra.
 {¶ 54} There is no claim in this cause as to unfairness.
 {¶ 55} Exclusion of testimony by a qualified witness is a severe sanction which must be utilized with great caution. Beckman v. YellowFreight Systems, Inc. (Feb. 12, 1997), 9th Dist. No. 17845. "Exclusion of otherwise reliable and probative evidence is a severe sanction, and it has been recognized that even where the undisclosed evidentiary material creates a substantial likelihood of surprise and there is an indication that one party deliberately disrupted the free flow of information between the parties, the court may grant a continuance to allow the other side time to find and present rebuttal testimony as an alternative to excluding the expert testimony. Ordinarily, it is the policy in Ohio to impose the least severe sanction, unless the conduct of the party is so negligent, irresponsible, contumacious or dilatory as to outweigh the policy that disposition of litigation should be upon its merits. Carvillev. Estate of Lucille Phillips (Aug. 25, 2000), 2nd Dist. No. 99CA52."
 {¶ 56} While Dr. Schirack did not file a cross-appeal, a motion to dismiss the appeal as to his inclusion with retention of the jury's verdict of no negligence, appeared in the conclusion to his responsive brief.
 {¶ 57} Appellant replies that such motion does not comply with Appellate Rule 15(A). Such argument is tenable. However, a similar approach of motion inclusion also is present in appellant's reply brief to that of Dr. Schirack and the same non-compliance with 15(A) may also be applicable to appellant.
 {¶ 58} However, in directing our attention to the merits of the issue raised, we agree that Dr. Bennett's testimony would have no bearing on its findings as to Dr. Schirack and must grant his motion. Appellant has failed to identify anything in Dr. Bennett's deposition testimony which was critical of Dr. Schirack.
 {¶ 59} Appellant's criticism of Dr. Schirack was Dr. Schirack did not give the appropriate information to the hematologist and not making sure the hematologist came in. Appellant argues "These areas were never explored with Dr. Bennett, so one cannot say that Dr. Bennett gave Dr. Schirack a complete defense on the standard of care." (Appellant's Brief and Opposition to Dismiss appellee Edward T. Schirack, D.O. at p. 6). The fact that these areas were "never explored" does not equate to an affirmative demonstration if they had been explored, Dr. Bennett would have been critical of Dr. Schirack.
 {¶ 60} Appellant further argues "Given the effort spent on Dr. Rodgers and the mileage gained, it is illogical for appellee to now claim that admission of Dr. Bennett's testimony would have been irrelevant to appellee Dr. Schirack." (Id. at p. 8). The "effort spent and the mileage gained" are not a substitute for proffer of Dr. Bennett's trial testimony as it pertains to Dr. Schirack. Without that proffer, we can only speculate as to what Dr. Bennett's trial testimony would have been.
 {¶ 61} We must therefore sustain appellant's Assignment of Error and determine that Civ.R. 32, in considering the totality of the circumstances permitted the testimony of Dr. Bennett and the exclusion thereof was not warranted.
 {¶ 62} This cause is affirmed as to the dismissal of Dr. Schirack.
 {¶ 63} This cause is reversed in part, affirmed as to Dr. Schirack and remanded for a new trial in accordance herewith.
By: Boggins, J., Hoffman, P.J. and Wise, J. concur.
Topic: Expert Witness.