JOURNAL ENTRY and OPINION
{¶ 1} Defendant-appellant Thomas C. Kroth (hereinafter "appellant") appeals the trial court's findings regarding the allocation of the parties' marital debt and spousal support. Having reviewed the arguments of the parties and the pertinent law, we hereby affirm the trial court.
 I. {¶ 2} According to the case, Elaine M. Kroth ("appellee") filed her complaint for divorce against appellant on August 16, 2001. The issues presented included the division of marital assets, allocation of debt, spousal support and a motion to show cause regarding appellant's violation of the temporary restraining order and the temporary support order.
 {¶ 3} A hearing on the above issues was conducted on October 2, December 5, 6, 2002, and January 9, 10, 17, 2003. Appellee requested spousal support and attorney's fees. More specifically, appellee claimed that appellant engaged in financial misconduct, arguing that appellant had incurred credit card debt of over $78,000, primarily in the pursuit of his race car driving hobby. The magistrate's decision was filed on May 8, 2003, and appellant filed objections which were later overruled by the trial court. On March 29, 2004, the trial court adopted the magistrate's decision which was incorporated into the decree of divorce filed on that date. Appellant then filed his timely appeal to this court.
 {¶ 4} According to the facts, at the time of trial the parties had been married for over 28 years and their two children were emancipated. Before the trial, the parties entered into stipulations indicating appellant's 2001 income to be $134,000 and appellee's income to be $40,539.51. The stipulations also listed the value of the parties' retirement accounts at $142,595.17 and other marital assets valued at $37,444.47. The only other asset from the marriage included $25,650.59 from the proceeds of the marital residence. The parties also stipulated that the total outstanding debt at the time of the initial filing was $111,812.10, which included $33,350.18 representing their children's student loans. The parties further stipulated that at the time of trial the outstanding debt totaled $111,251.30.
 {¶ 5} Appellee alleged that appellant was engaging in financial misconduct. The trial court found that the evidence adduced at trial did not support a finding of financial misconduct, as that concept has been defined. Although the trial court did not find financial misconduct on the part of appellant, the court did find a majority of the credit card debt to be attributable to him. The trial court found that the evidence supported the determination that a precisely equal division of marital debt would not be equitable under the circumstances of this case.[1]
 {¶ 6} In addition to the substantial debt in this case, the parties did stipulate to various marital assets. The parties stipulated to the following marital assets:
"1. Proceeds from the sale of the marital home of $25,650.59 (as of 8/16/02) held in a National City Bank account
2. New York Life policy (whole) in Husband's name — $9,593.88
3. New York Life policy (whole) in Husband's name — $200
4. Porsche 924S in Husband's name — $2,000
5. Cleveland Clinic Pension Fund in Wife's name — $6,203 as of 12/31/00
6. Fidelity Investment Retirement Savings in Wife's name — $33,832.36 as of 6/30/02 (less loan of $3,679.85)
7. 401(k) in Husband's name — $106,239.66 as of 6/30/02."
 {¶ 7} The retirement accounts total $142,595.17 ($30,152.51 plus.
 {¶ 8} $6,203 plus $106,239.66) and the remaining assets total $37,444.47.[2]
 II. {¶ 9} Appellant's first assignment of error states the following: "The decision of the magistrate failed to recount accurately the factual evidence offered at hearing thereby vitiating its usefulness as a finding upon which the court could rely." Appellant's second assignment of error states the following: "Because the factual evidence was not recounted accurately, the findings and conclusions based thereof are against the manifest weight of the evidence, and are unreasonable, arbitrary or unconscionable and constitute an abuse of discretion."
 {¶ 10} Appellant's third assignment of error states the following: "The decision of the magistrate [and therefore the court] further fail [sic] to accurately state or apply the applicable law."
 {¶ 11} Appellant's fourth assignment of error states the following: "Such failures are contrary to law, unreasonable, arbitrary or unconscionable and reflect an abuse of discretion, all to the prejudice of the defendant husband."
 {¶ 12} Because of the substantial interrelation of appellant's assignments of error, we shall address them together. Appellant argues that the lower court failed to accurately recount the evidence and/or apply the law, thereby resulting in an abuse of discretion. However, we do not find merit in appellant's claims.
 {¶ 13} The standard of review for such matters is to determine whether the trial court abused its discretion in reaching its judgment. Absent a clear abuse of that discretion, the lower court's decision should not be reversed. Mobberly v. Hendricks (1994), 98 Ohio App.3d 839.
 {¶ 14} The term "abuse of discretion" connotes more than an error of law or judgment. It implies that a court's attitude is unreasonable, arbitrary or unconscionable. The term "discretion" itself involves the idea of choice, of an exercise of the will, of a determination made between competing considerations. In order to have an "abuse" in reaching such determination, the result must be so palpably and grossly violative of fact and logic that it evidences not the exercise of will but perversity of will, not the exercise of judgment but defiance thereof, not the exercise of reason but rather of passion or bias. Huffman v. HairSurgeons, Inc. (1985), 19 Ohio St.3d 83.
 {¶ 15} Domestic relations judges are generally given broad discretion in the fashioning of equitable relief under the specific facts and circumstances of each case. This discretion extends to the granting of spousal support, the equitable distribution of property, and evidentiary rulings. Burkes v. Burkes, Cuyahoga App. No. 75518, 2000-Ohio-1176. The credibility of witnesses is primarily a matter for the trier of fact.State v. DeHass (1967), 10 Ohio St.2d 230. See, also, Jacobson v.Starkoff (June 6, 1996), Cuyahoga App. No. 69122.
 {¶ 16} An appellate court will presume that the judge only considered relevant, material and competent evidence in rendering his judgment,Dozer v. Dozer (1993), 88 Ohio App.3d 296, while maintaining regularity in his proceedings and correctness in his findings of fact. Hartt v.Munobe (1993), 67 Ohio St.3d 3.
 {¶ 17} It is with the above standards in mind that we now address the case sub judice. We find the record to be replete with evidence supporting the trial court's decision.
 {¶ 18} The parties in the case at bar were married for over 28 years and appellant earned a high salary. Prior to the commencement of the trial, appellant earned $134,000 per year and appellee earned $40,539.51, bringing their combined income to $174,539.51. However, despite their ample income, both parties are leaving the marriage with very little liquid assets. Appellee contends that their current financial situation is primarily because of appellant's mismanagement of the household finances. Despite appellee's claims, the trial court did not find any financial misconduct on the part of appellant. However, the lower court did find that appellant had more control over the finances and was responsible for most of the credit card debt. More specifically, the trial court stated the following:
"Two (2) years and eight (8) months elapsed between the refinancing and the filing of the divorce in August of 2001. The parties stipulated (Joint Exhibit 1) that the total credit card debt at the time of the divorce filing was $78,461.92, another $52,000 of credit card debt havingbeen accumulated during that period.
"Plaintiff submitted numerous exhibits in support of her argument that none of the credit card debt of over $78,000 is legitimate marital debt. Plaintiff's Exhibits 2, 3, 12 and 20 consist of the monthly statements from various credit cards on which she highlighted expenditures she alleges to be associated with Defendant's car racing hobby. She highlighted all car related items including such things as tires and gas, as well as meals and lodging for in-state and out-of-state races. Plaintiff's Exhibit 3, for example, covers a three (3) year period from May 1998 to June 2001 (primarily 1998 and 1999). For 1999, the car related items total approximately $10,000.
"Defendant's response is that the parties owned as many as five (5) cars during the period in question * * *. However, Exhibits H and I do not show the complete picture. * * * In addition to the car related expenses, Plaintiff points to the numerous cash advances taken by Defendant in the form of "convenience" and "Quick credit" checks between 1998 and 2001. Plaintiff's Exhibits 2, 9 and 11 show these charges on several MBNA accounts and Defendant's Key Privilege account. The total of such withdrawals in Exhibits 9 and 11 was $15,000. Plaintiff's Exhibit 2, covering just the year 2000, shows "convenience" or "Quick credit" checks drawn on his MBNA card (#0777) or Key Privilege card (#5031) totaling $22,398. * * * There is no question that Defendant had completecontrol over the family finances. * * * She testified that Defendant flew into a rage when she questioned the spending."[3]
 {¶ 19} (Emphasis added.)
 {¶ 20} In addition to the trial court's just and proper determination regarding the evidence, we find that the trial court complied with the law. The trial court has the authority to divide the marital property if an equal division of the marital properly would be inequitable. More specifically, R.C. 3105.171, equitable division of marital and separate property; distributive award, states the following:
"(B) In divorce proceedings, the court shall, and in legal separation proceedings upon the request of either spouse, the court may, determinewhat constitutes marital property and what constitutes separateproperty. In either case, upon making such a determination, the courtshall divide the marital and separate property equitably between thespouses, in accordance with this section. For purposes of this section,the court has jurisdiction over all property in which one or both spouseshave an interest.
(C) (1) Except as provided in this division or division (E) of this section, the division of marital property shall be equal. If an equaldivision of marital property would be inequitable, the court shall notdivide the marital property equally but instead shall divide it betweenthe spouses in the manner the court determines equitable. In making a division of marital property, the court shall consider all relevant factors, including those set forth in division (F) of this section. * * *
(F) In making a division of marital property and in determining whether to make and the amount of any distributive award under this section, the court shall consider all of the following factors:
(1) The duration of the marriage;
(2) The assets and liabilities of the spouses;
(3) The desirability of awarding the family home, or the right to reside in the family home for reasonable periods of time, to the spouse with custody of the children of the marriage;
(4) The liquidity of the property to be distributed;
(5) The economic desirability of retaining intact an asset or an interest in an asset;
(6) The tax consequences of the property division upon the respective awards to be made to each spouse;
(7) The costs of sale, if it is necessary that an asset be sold to effectuate an equitable distribution of property;
(8) Any division or disbursement of property made in a separation agreement that was voluntarily entered into by the spouses;
(9) Any other factor that the court expressly finds to be relevant and equitable."
 {¶ 21} Given that the trial court's decision was based on the fact that a majority of the debt was directly attributable to appellant's spending and that fact was accurately reflected in the record, we find the trial court's actions to be well taken.
 {¶ 22} Therefore, based on the record, hearings, motions, and trial evidence presented in the case sub judice, we find the decision of the magistrate accurately recounts the factual evidence and states and applies the applicable law. Furthermore, we do not find any abuse of discretion on the part of the lower court.
 {¶ 23} The domestic relations court's review of the evidence was thorough and proper. Our own review of the evidence fails to portray an abuse of discretion; that is, that the domestic relations court's attitude was unreasonable, arbitrary, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 5 Ohio B. 481. Absent that finding, we must affirm.
Judgment affirmed.
It is ordered that appellee recover of appellant her costs herein taxed.
The court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Court of Common Pleas, Domestic Relations Division, to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
Celebrezze, Jr., P.J., and Rocco, J., Concur.
[1] See decree of divorce, p. 3 and magistrate's decision with findings of fact and conclusions of law, p. 8.
[2] Magistrate's decision, p. 2.
[3] See magistrate's decision with findings of fact and conclusions of law, filed May 8, 2003, p. 4-5.