OPINION
{¶ 1} This is an appeal from an order of the domestic relations division of the court of common pleas that modified a prior order allocating parental rights and responsibilities.
 {¶ 2} The marriage of Appellant, Jeannene Page Schaffnit, and Appellee, Scot Brian Page, was terminated by a decree of *Page 2 
divorce on December 12, 2000. The parties are the parents of two minor children: Scot Brian Page, Jr., born December 1, 1992, and Jeffrey James Page, born December 14, 1994. The domestic relations court entered an order for shared parenting of both children, to which the parties had agreed.
 {¶ 3} On July 3, 2002, Jeannene[1] was designated residential parent of both children, by agreement of the parties. Scot was granted rights of visitation and ordered to pay child support.
 {¶ 4} On June 15, 2006, Scot moved to modify the allocation of parental rights and responsibilities to Jeannene the court had ordered in 2002. Scot asked the court to designate him the residential parent of both boys. While that motion was pending, Scot was granted temporary custody of Scot, Jr.
 {¶ 5} The court heard testimony and other evidence on Scot's motion during three days in July of 2007. On September 10, 2007, the court granted Scot's motion and allocated to him the parental rights and responsibilities for both Scot, Jr., and Jeffrey. Jeannene was ordered to pay child support and provide medical insurance coverage for the children available *Page 3 
to her through her employment. Jeannene filed a timely notice of appeal.
FIRST ASSIGNMENT OF ERROR
 {¶ 6} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT FOUND CHANGED CIRCUMSTANCES TO WARRANT CONSIDERING A MODIFICATION FOR CUSTODY."
 {¶ 7} Upon satisfactory proof of the causes alleged in a complaint for divorce, the domestic relations court must make an order for the disposition, care, and maintenance of the children as is in their best interests and in accordance with R.C. 3109.04. R.C. 3105.21. In so doing, the court must allocate the parties' parental rights and responsibilities between them in accordance with R.C. 3109.21 to3109.36. R.C. 3109.04(A). The court has continuing jurisdiction to modify its allocation orders during the minority of the child or children concerned. Loetz v. Loetz (1980), 63 Ohio St.2d 1.
 {¶ 8} Civ. R. 75(J) states: "The continuing jurisdiction of the court shall be invoked by the motion filed in the original action . . ." The court's exercise of that continuing jurisdiction is, however, limited by R.C. 3109.04(E)(1)(a), which states:
 {¶ 9} "The court shall not modify a prior decree allocating parental rights and responsibilities for the care *Page 4 
of children unless it finds, based on facts that have arisen since the prior decree or that were unknown to the court at the time of the prior decree, that a change has occurred in the circumstances of the child, the child's residential parent, or either of the parents subject to a shared parenting decree, and that the modification is necessary to serve the best interest of the child. In applying these standards, the court shall retain the residential parent designated by the prior decree or the prior shared parenting decree, unless a modification is in the best interest of the child and one of the following applies:
 {¶ 10} "(i) The residential parent agrees to a change in the residential parent or both parents under a shared parenting decree agree to a change in the designation of residential parent.
 {¶ 11} "(ii) The child, with the consent of the residential parent or of both parents under a shared parenting decree, has been integrated into the family of the person seeking to become the residential parent.
 {¶ 12} "(iii) The harm likely to be caused by a change of environment is outweighed by the advantages of the change of environment to the child."
 {¶ 13} The General Assembly enacted R.C. 3109.04(E)(1)(a) *Page 5 
pursuant to the authority conferred on it by Section 4(B), Article IV of the Ohio Constitution, which authorizes the General Assembly to establish the jurisdiction of the courts of common pleas and their divisions. Mattone v. Argentina (1931), 123 Ohio St. 393. In that connection, the change of circumstances finding required by R.C. 3109.04(E)(1)(a) is jurisdictional in character. Absent that predicate finding, the court may not proceed to modify a prior order allocating parental rights and responsibilities on a finding that modification would be in the child's best interest.
 {¶ 14} The domestic relations court has very broad discretion in matters of parental rights and responsibilities, including modifications ordered pursuant to R.C. 3109.04(E)(1)(a). Palladino v. Palladino
(1971), 27 Ohio St.2d 175; Trickey v. Trickey (1952), 158 Ohio St. 9. An appellate court will not reverse a modification ordered pursuant to R.C. 3109.04(E)(1)(a) unless the judgment constitutes an abuse of discretion.Baxter v. Baxter (1971), 27 Ohio St.2d 168. The judgment will be affirmed if it is supported by competent, credible evidence.Id.
 {¶ 15} Defendant-Appellant does not argue that the domestic relations court's finding that a change of circumstances occurred is not supported by competent evidence. Instead, she *Page 6 
points out that the guardian ad litem appointed for the children concluded that remaining with her would be in the best interest of both children. She also points to evidence that preponderates in her favor.
 {¶ 16} Our task on appeal is to determine whether the domestic relations court abused its discretion. In AAAA Enterprises, Inc. v.Riverplace Community Development Corporation (1990), 50 Ohio St. 3d 157,161, the Supreme Court wrote:
 {¶ 17} "`Abuse of discretion' has been defined as an attitude that is unreasonable, arbitrary or unconscionable. Huffman v. Hair Surgeon,Inc. (1985), 19 Ohio St.3d 83, 87, 19 OBR 123, 126, 482 N.E.2d 1248,1252. It is to be expected that most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary.
 {¶ 18} "A decision is unreasonable if there is no sound reasoning process that would support that decision. It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result."
 {¶ 19} Acting on that charge, our focus is not on evidence *Page 7 
that would support denial of Scot's motion on the best interest issue, but on whether the evidence on which the court relied supports its finding that a change of circumstances required by R.C. 3109.04(E)(1)(a) occurred.
 {¶ 20} The court found that, in 2001, Jeannene and another woman, Daria Schaffnit, participated in a same-sex commitment ceremony in the State of West Virginia, and that they have resided together since then with Scot, Jr., and Jeffrey. The court also found that both Scot, Jr. and Jeffrey have "a poor relationship" with both their mother and Daria, and that Daria "has not developed the social skills necessary to enable her to effectively interact with young men of this age." The court further found that since Jeannene and Daria established their relationship, "Scot, Jr., has been involved in counseling for anger management issues and Jeff has been involved in counseling for depression issues. The credible evidence in this case suggests that both of the children's issues for which they were counseling were primarily a result of the environment in which they were living at their mother's." (Entry, Sept. 10, 2007, p. 5-8).
 {¶ 21} These facts and circumstances are not seriously disputed. The issue is whether the domestic relations court abused its discretion when it held them sufficient to *Page 8 
constitute the change of circumstances that R.C. 3109.04(E)(1)(a) requires. To be sufficient for that purpose, the change need not be "substantial," but must at least be one which is "a change of substance, not a slight or inconsequential change." Davis v. Flickinger (1997),77 Ohio St.3d 415, 418.
 {¶ 22} A parent's conduct in engaging in a homosexual relationship with another, consenting adult has no relevance to allocation of parental rights and responsibilities, absent proof that the parent's relationship presently has an adverse collateral impact on the child or children involved. Inscoe v. Inscoe (1997), 121 Ohio App.3d 396. The same test reasonably applies to whether the relationship constitutes a change of circumstances for purposes of R.C.3109.04(E)(1)(a).
 {¶ 23} There was competent, credible evidence presented to the domestic relations court that, as a collateral result of Jeannene's relationship with Daria, including Daria's conduct, both Scot, Jr., and Jeffrey have experienced personality development disorders that are neither slight nor inconsequential. Both boys have received counseling for those problems. Therefore, the trial court did not abuse its discretion when it found that a change of circumstances sufficient to satisfy R.C. 3109.04(E)(1)(a) occurred. *Page 9 
 {¶ 24} The first assignment of error is overruled.
SECOND ASSIGNMENT OF ERROR
 {¶ 25} "THE TRIAL COURT ERRED WHEN IT FOUND THAT THE MODIFICATION WAS NECESSARY TO SECURE THE BEST INTEREST OF THE MINOR CHILDREN."
 {¶ 26} After a change of circumstances is found, the domestic relations court must find that modification is necessary to serve the best interests of the child and that the harm likely to be caused the child by a change of environment is outweighed by the resulting advantages in order to modify a prior order pursuant to R.C. 3109.04(E)(1)(a)(iii). Otherwise, the presumption in R.C. 3109.04(E)(1) in favor or retaining the current custodial or residential parent is not rebutted. R.C. 3109.04(F)(1)(a)-(h) sets out a catalogue of factors that section states the court "shall consider" when they are relevant, along with any other relevant factors that also apply.
 {¶ 27} R.C. 3109.04(F)(1)(b) requires consideration of the child's wishes and concerns as expressed to the court in an interview. The court interviewed both boys. Scot, Jr., age 14, expressed a desire to live with his father, and the court found him sufficiently mature to adequately express his wishes. Jeffrey, age 12, also expressed a wish to live with *Page 10 
his father, but the court found that Jeffrey is not sufficiently mature to make that choice. (Entry, Sept. 10, 2007, p. 4-5).
 {¶ 28} R.C. 3109.04(F)(1)(c) requires the court to consider "the child's interaction and relationship with his parents, siblings, and any other person who may affect the child's best interest." The court found that both Scot and his mother, the boys' grandmother, with whom Scot resides, have a close and loving relationship with both boys. (p. 9-10). The court also found that Jeannene has become unable to maintain a positive relationship with her two children. In support of its finding, the court concluded that, while Scot "has significantly more patience with the children and is far more likely to administer appropriate discipline than" Jeannene (p. 12), Jeannene "has a very dominant personality, so much so, that she has a tendency of (sic) losing touch with how her actions impact others, including her children." (p. 11). The court also found that Jeannene's partner, Daria, "has a relatively poor relationship" with both children. (p. 6).
 {¶ 29} R.C. 3109.04(F)(1)(d) and (e), respectively, require consideration of "the child's adjustment to his home, school, and community" and the "mental and physical health of all persons involved in the situation." The court found that "as *Page 11 
the children's needs have changed as they have gotten older, Jeannene Schaffnit has not adapted well, as a parent to address these needs," and that "her failure to keep pace with the developmental needs of her children has resulted in a breakdown of her relationship with the children and an inability to communicate with them." (p. 7). The court further found that both boys' need for counseling is "primarily the result of the environment in which they were living in (sic) at their mother's." (p. 8). With respect to Jeffrey, the court further found that his depression results from those difficulties, and "that if Jeffrey is not removed from this environment, his depression will most likely worsen and his development will be stalled even greater than it already has been." (p. 9).
 {¶ 30} Finally, R.C. 3109.04(F)(1)(f) requires the court to consider which parent would be "more likely to honor and facilitate visitation and companionship rights approved by the court." The court found that Scot had faithfully exercised his rights of visitation, even though that required him to travel a considerable distance from his home in Pennsylvania to do so. The court also found that Jeannene had moved with the children to Westlake, Ohio, and that she did not tell either boy or Scot of her plans to do so "until the last *Page 12 
hour." (p. 11). The court concluded that Scot would be the more likely to honor the court's orders.
 {¶ 31} The court concluded that these considerations demonstrate that the best interest of both boys would be served by making Scot their residential parent, and that the advantages of that change outweigh any harm. Jeannene does not contest any of the findings of fact on which the court relied, except for its finding that Jeannene's poor relationship with her sons is because Jeannene has "prioritized her own personal issues in life, including her fight for gay rights" above her relationship with her two sons. Jeannene argues that there is no competent, credible evidence that she has advocated for gay rights, and that her sole act of "advocacy" for that cause is putting rainbow bumper stickers on her car.
 {¶ 32} We agree that there is no competent, credible evidence that Jeannene has engaged in public advocacy to the detriment of her relationship with Scot, Jr. and Jeffrey. However, there is competent, credible evidence that Jeannene's relationship with Daria and Daria's presence in their life has had a collateral adverse impact on Jeannene's sons and her relationship with her sons. That fact permits the court to weigh that impact into the balance when determining the best *Page 13 
interests of the children. Inscoe.
 {¶ 33} Scot, Jr.'s expressed desire to live with his father is significant, and the court gave it an appropriate weight. It did not give a like weight to Jeffrey's expressed desire, due to his age and lack of maturity, but the court could reasonably find that it is in Jeffrey's best interest to also be with his older brother. The adverse collateral effects of their mother's relationship with Daria and Daria's role in their lives is not inconsequential, and the record shows little if any potential for improvement. Both boys are in a very important, formative phase of their development. For that reason, and on this record, the court could reasonably find that it is in their best interest that they live with Scot, and that the advantages to them of that change outweighs any apparent harm they might experience.
 {¶ 34} The second assignment of error is overruled.
THIRD ASSIGNMENT OF ERROR
 {¶ 35} "THE TRIAL COURT ABUSED ITS DISCRETION AND VIOLATED THE STATE AND FEDERAL CONSTITUTIONS IN CHANGING CUSTODY BASED ON THE CUSTODIAL PARENT'S SEXUAL ORIENTATION WHEN THE SOLE EVIDENCE OF ADVERSE EFFECT ON THE CHILD RESULTED FROM THE PREJUDICE OF OTHERS."
 FOURTH ASSIGNMENT OF ERROR *Page 14 
 {¶ 36} "THE TRIAL COURT ABUSED ITS DISCRETION WHEN IT RELIED UPON APPELLANT'S SEXUAL ORIENTATION AS A FACTOR IN MODIFYING CUSTODY AND VIOLATED CONSTITUTIONAL GUARANTEES OF EQUAL PROTECTION, DUE PROCESS AND FREEDOM OF SPEECH."
 {¶ 37} These two assignments of error are interrelated, and will be considered together.
 {¶ 38} The court found that Jeffrey, because of his strained relationship with his mother and his very poor relationship with her partner, Daria, has "very few, if any, friends in his current school community," and that this circumstance has contributed to his depression. (p. 9). From that finding, Jeannene argues that the court erred when it found that private biases against her same-sex relationship with Daria are sufficient to justify a modification of the court's prior order, contrary to the holding in Palmore v. Sidoti
(1984), 466 U.S. 429, 104 S.Ct. 1879, 80 L.Ed.2d 421.
 {¶ 39} In Palmore, following a divorce in which custody of a child was awarded to her mother, and the subsequent marriage of the mother, a Caucasian, to an African-American male, the trial court modified the custody order in favor of the child's father. There was no evidence that the mother's mixed-race remarriage or her new husband had produced any adverse impact on the child, who was but three years of age. The trial court *Page 15 
nevertheless ordered a modification on a finding that "it is inevitable that (the child) will, if allowed to remain in her present situation and attains school age, and thus (sic) more vulnerable to peer pressures, suffer from the social stigmatization that is sure to come."466 U.S., at 431.
 {¶ 40} Because racial classifications are inherently suspect, a state action which creates or enforces a racial classification is subject to strict scrutiny upon judicial review of an equal protection challenge. The custody determination in Palmore could not survive that inquiry because the finding on which the court modified its prior custody order was speculative, at best. A different outcome might have resulted on evidence showing that the child had, in fact, been adversely impacted by the mother's remarriage. Inscoe. It was on a finding of that kind that the court modified custody in the present case.
 {¶ 41} Sexual orientation, unlike race, is not an inherently suspect classification. Lawrence v. Texas (2003), 539 U.S. 558, 123 S.Ct. 2472,156 L.Ed.2d 508, was concerned with sexual orientation, and involved a state statute which prohibited private homosexual conduct between consenting adults. The Supreme Court held that the prohibition violates the Due Process Clause of the Fourteenth Amendment because the *Page 16 
prohibition places an undue burden on the participants' liberty interests.
 {¶ 42} The liberty interest is not absolute, however. It assumes the state's power to impose limits on the exercise of private rights in order to serve the state's legitimate interests. Lawrence v. Texas held that the state's interest in prohibiting homosexual sodomy was insufficient to justify a statute criminalizing that conduct. The same would apply, by example, to a similar limitation placed on Jeannene's relationship with her partner, Daria. However, Jeannene's liberty interest in retaining the right that was previously awarded her to be the residential parent of her two children is subject to the state's legitimate interest in insuring that the award and any subsequent modification of it pursuant to R.C. 3109.04(E)(1) is in the best interest of her children.
 {¶ 43} Even were the Equal Protection Clause to apply to this question, the trial court's judgment does not turn on the existence of a classification the Equal Protection Clause prohibits. Unlike inPalmore, there is competent, credible evidence of a present and adverse collateral consequence to Scot, Jr. and Jeffrey arising from the fact on which the alleged classification is predicated, their mother's same-sex relationship. Any protection afforded that alleged *Page 17 
classification by the Equal Protection Clause cannot likewise shield that collateral consequence from a remedy the state is authorized to enforce in order to correct it. And, the state, in its role asparens patriae of children whose care, maintenance, and support are at issue in actions for divorce, R.C. 3109.011, has a legitimate interest in correcting, or at least avoiding, a present and adverse collateral consequence to the parties' children that the court's prior order created. Inscoe.
 {¶ 44} The particular peer pressures which the court found have worked to Jeffrey's detriment are not the sole or primary reason for the modification the court ordered. The primary reason is the poor interpersonal relationship both boys have with Jeannene and her partner, Daria, the serious problems that has caused them, and the real prospect of improvement if their father, Scot, is designated residential parent. Again, Jeannene cannot shield herself or the rights she was previously awarded from the court's power to modify its prior order for these causes because she is engaged in a same-sex relationship from which those causes flow.
 {¶ 45} The third and fourth assignments of error are overruled. The judgment of the domestic relations court will be affirmed. *Page 18 
 {¶ 46} As a final matter, Appellee has moved to strike the written reports of Drs. Hrinko and Payne that are attached to Appellant's brief, because they are not part of the record that was before the domestic relations court. The motion will be granted.
WOLFF, P.J. And FAIN, J., concur.
Copies mailed to:
Jon A. Doughty, Esq.
William D. West, Esq.
Hon. Thomas J. Capper
[1] For clarity and convenience, the parties are identified by their first names. *Page 1