[Cite as *Ikerd Scuba Ents., L.L.C. v. Lakes*, 2014-Ohio-533.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

IKERD SCUBA ENTERPRISE LLC :

       Plaintiff-Appellee

v.

MICAH LAKES, et al.

       Defendants-Appellants

:    Appellate Case No. 25704

:    Trial Court Case No. 2011-CV-5823

:    (Civil Appeal from
:     Common Pleas Court)

· · · · · · · · · · ·

O P I N I O N

Rendered on the 14th day of February, 2014.

· · · · · · · · · · ·

J. ANDREW ROOT, Atty. Reg. #0059287, 133 East Market Street, Xenia, Ohio 45385
       Attorney for Plaintiff-Appellee

TERRY L. LEWIS, Atty. Reg. #0010324, Terry L. Lewis Co., L.P.A., 10 West Second Street, Suite 1100, Dayton, Ohio 45402
       Attorney for Defendants-Appellants

· · · · · · · · · · · ·

FAIN, J.

{¶ 1} Defendants-appellants Micah Lakes, Kevin DeBrosse, and Daniel Mullin appeal from a judgment rendered against them for damages, attorney fees, and costs. Defendants contend that the trial court erred by holding defendants personally liable on a lease they signed

that identified a business, not them individually, as the tenant. Defendants also contend that the trial court erred in its calculation of damages by including fees and rents that were not provided for by the lease. Defendants further contend that the trial court erred by not joining the J. Debrullin Company as a party to the action pursuant to Civ.R. 19 and 19.1, and by denying their motion to dismiss pursuant to Civ.R. 12(B)(6). Finally, defendants contend that the trial court erred in awarding attorney fees without first holding a hearing and making a determination as to the reasonableness of the fees requested by plaintiff-appellee Ikerd Scuba Enterprise LLC.

{¶ 2} We conclude that the trial court erred in its calculation of damages by including fees for common area maintenance and utilities. Therefore, the judgment of the trial court is reversed, in part, and this cause is remanded for a re-calculation of damages.

## I. Defendants Sign a Lease Agreement Without Stating Whether They Are Signing in their Individual or Corporate Capacity

{¶ 3} James Ikerd is the owner and shareholder of plaintiff-appellee Ikerd Scuba Enterprise LLC. Lakes, DeBrosse, and Mullin are stockholders in a corporation named the J. Debrullin Company, Inc. In 2005, Lakes, DeBrosse, and Mullins operated a business known as Advanced Spas & Pools. According to them, this business is a "subsidiary" of the J. Debrullin Company. However, it does not appear that Advanced Spas & Pools is either incorporated or an actual subsidiary of the J. Debrullin Company; it appears that Advanced Spas & Pools is a fictitious name under which defendants did business.

{¶ 4} In late 2005, defendants were interested in leasing part of a commercial building owned by Ikerd Scuba Enterprises. James Ikerd presented defendants with a lease to sign. The

lease identified the Landlord as "IKERD SCUBA ENTERPRISE" and the Tenant as "ADVANCED SPAS AND POOLS." Ikerd obtained the form of the lease from the internet. Micah Lakes handwrote a few changes to the lease in paragraphs 1, 8, and 9, but otherwise the lease remained as Ikerd had presented it to the defendants. On page six of the lease, Ikerd signed his name on the line marked "Landlord Signature," and Lakes, DeBrosse, and Mullins each signed their names on the three lines marked "Tenant Signature." Other than the designations "Landlord Signature," and "Tenant Signature," there was no indication by any of the signing parties that they were signing on behalf of a corporation or any other business entity.

{¶ 5} The lease provided that it was "made and effective" on December 1, 2005. The lease further stated that it began "upon opening or 6 weeks after landlord obtains certificates of occupancy from City of Kettering, whichever comes first," and that it ended on December 31, 2010. Section 2 of the lease provided for monthly rent in the amount of $4,392, and a one-time security deposit of $4,392. In December 2005, Ikerd received a check for $4,392, representing the amount of the security deposit under the lease. The defendants began sending monthly payments of $5,078.25 in April 2006. The checks were made out to plaintiff and drawn on the bank account of "The J. Debrullin Company DBA Advanced Spas and Pools."

{¶ 6} Although the lease provided for an end date of December 31, 2010, the defendants moved out of the commercial building in July 2009. After moving out, the defendants made several payments to plaintiff in the amount of $1,000 each. The last payment sent to plaintiff was in November 2010.

**II. Procedural History**

{¶ 7}   In May 2011, Ikerd Scuba Enterprise brought this action against the defendants in the Common Pleas Court of Greene County.  Upon motion of the defendants, the case was transferred to the Common Pleas Court of Montgomery County.   The case was tried to the court in July 2012.   In September, the trial court entered judgment for plaintiff and set a briefing schedule to determine the amount of attorney fees to which plaintiff was entitled.   The defendants filed nothing in opposition to the plaintiff's requested amount of attorney fees.  In March 2013, the trial court awarded attorney fees and costs totaling $11,094.55 to the plaintiff.

{¶ 8}   The defendants appeal from the judgment rendered against them.

### III. Defendants Were Personally Liable Under the Lease,

### and There Was No Mutual Mistake of Fact

{¶ 9}   The defendants' First Assignment of Error States:

THE TRIAL COURT ERRED IN FINDING THAT A CONTRACT, WHICH REFERS TO A SUBSIDIARY OF A CORPORATION, CREATES LIABILITY FOR A SIGNATORY SOLELY BECAUSE THE INDIVIDUAL SIGNED THE CONTRACT IN HIS INDIVIDUAL NAME.

{¶ 10}   The defendants' Third Assignment of Error states:

THE TRIAL COURT ERRED IN NOT FINDING THAT THE LEASE WAS VOIDABLE DUE TO MUTUAL MISTAKE.

{¶ 11}   The defendants contend that their signatures alone on the lease do not establish individual liability for each of them, because the lease identifies another entity, Advanced Spas & Pools, as the party bound by the lease.  Conversely, the plaintiff contends that the defendants became personally liable under the lease when they failed to state that they were signing on

behalf of a business entity.

{¶ 12} It is undisputed that Advanced Spas & Pools is identified as the tenant in the lease. However, defendants all signed the lease without stating that they were signing in their official capacities on behalf of Advanced Spas & Pools. Previous decisions have found individual liability when a party signs a contract without stating that the party is signing in his corporate capacity for a corporation. *Spicer v. James*, 21 Ohio App.3d 222, 487 N.E.2d 353 (2d Dist.1985); *The Big H, Inc. v. Watson*, 1st Dist. Hamilton No. C-050424, 2006-Ohio-4031; *Lorain Broadway Realty, Inc. v. Hoban*, 9th Dist. Lorain No. 89CA004690, 1990 WL 77122 (June 6, 1990). Furthermore, Advanced Spas & Pools apparently is not even a corporation, but rather a fictitious business name used by the defendants to do business.

{¶ 13} The defendants acknowledge that Advanced Spas & Pools is a fictitious name, but contend that it is a fictitious name for the J. Debrullin Company, and that the plaintiff was bound to know that, since Ikerd, personally, had bought a spa from Advanced Spas & Pools about two years before the lease was executed, and the contract of purchase indicated that Advanced Spas & Pools was a "subsidiary" of the J. Debrullin Company. We find this argument unpersuasive. There is no evidence in the record that Ikerd or his corporation had a regular course of dealing with the J. Debrullin Company, doing business as Advanced Spas & Pools or otherwise. In our view, Ikerd was not obligated to remember, two years later, specific terms of a contract he entered into to purchase a spa. To hold otherwise would place unrealistic expectations on corporate officers entering into transactions on behalf of their corporations that they should be able to recall details of their personal transactions, going back years, and relate those details to an unrelated corporate transaction.

{¶ 14}   Under the particular facts of this case, we conclude the trial court did not err in finding that the defendants are individually liable under the lease.

{¶ 15}   The defendants also contend that the trial court erred by failing to find that there was a mutual mistake of fact that was material to the lease.   According to the defendants, none of the parties who signed the lease intended themselves to be   personally liable for any damages resulting from a breach of the obligations under the lease.   Moreover, defendants contend that Ikerd specifically testified that he did not intend the defendants to be individually liable for any breaches of the lease.   We do not agree.

{¶ 16}   Ikerd did not testify that he did not intend for the defendants to be held personally liable under the lease.   At the most, Ikerd testified that when he signed the lease he did not consider, one way or the other, whether the defendants would be personally liable.   Upon the record before us, we conclude the trial court did not err in finding that there was no mutual mistake of fact material to the contract at the time the parties signed the lease.

{¶ 17}   The defendants' First and Third Assignments of Error are overruled.


**IV. The Trial Court Erred in Awarding Damages for Common Area**
**Maintenance and Utility Fees, But Did Not Err in Awarding Damages**
**for Monthly Rent Through December 31, 2010 and Realtor Fees**

{¶ 18}   The Second Assignment of Error states:

THE TRIAL COURT ERRED IN GRANTING DAMAGES PURSUANT TO GENERAL PARAGRAPH 15 ON BREACH AND ALSO GRANTING DAMAGES ON THE SPECIFIC PARAGRAPH 28 AS TO VACATING THE

PREMISES AFTER THREE YEARS.

{¶ 19}   The Sixth Assignment of Error states:

THE TRIAL COURT ERRED WITH RESPECT TO ITS CALCULATION OF DAMAGES.

{¶ 20}   In its September 18, 2012 Verdict and Judgment in Favor of Plaintiff, the trial court awarded the following damages to plaintiff:   $86,337.39 in "Past Due Rent," $4,038.44 for "Utilities," $6,324.28 in "Realtor Fees," and an amount of costs and attorney fees to be determined.   Dkt. 41, p. 3.

{¶ 21}   The defendants contend that the trial court erred in its calculation of damages, because Sections 15 and 28 of the lease conflict as to how damages should be measured in the event of breach, and Section 28, as the more specific provision, should control over Section 15. We do not agree.

{¶ 22}   Section 15 of the lease provides that, in the event of default by the tenant, the landlord shall have any "right or remedy available to Landlord on account of any Tenant default, either in law or equity.   Landlord shall use reasonable efforts to mitigate its damages."   This section of the lease provides broad remedies to the landlord in case of a breach by the tenant, and supports the trial court's award of monthly rent payments beyond the date on which the defendants moved out of the commercial building, up until December 31, 2010, the ending date identified in the lease.

{¶ 23}   The defendants contend that Section 15 is limited by Section 28 of the lease, which provides:   "If Tenant moves out after third year Tenant agrees to pay Landlord-Realtor fees of $6,324.48 dollars and pay for cost to replace front doors with standard doors like on rest

of building.   Approximate costs $8000.dollars."   According to the defendants, Section 28 of the lease limits the total amount of damages due to the plaintiff if the defendants move out of the commercial building after three years, which they did.

{¶ 24}   By its express terms, Section 28 does not provide that it limits the total damages due to the landlord in case of a breach of the lease after three years.   Rather, Section 28 states that the tenant agrees to pay for realtor fees and the replacement of the front doors if the tenant moves out of the commercial building after three years.   This language supports a finding that the tenant may be responsible for realtor fees and the cost of door replacement if the tenant moves out after three years.   We conclude that the provisions of Section 28 do not limit the remedies available to the landlord; those provisions provide specific obligations of a tenant in the specified event, which supplement the   remedies generally provided in Section 15 in the event of a default by the tenant.   Therefore, the trial court did not err in awarding monthly rent through December 2010 and realtor fees.

{¶ 25}   The defendants also contend that the trial court erred by awarding Common Area Maintenance ("CAM") fees in the "Past Due Rent" portion of the judgment.   The plaintiff disagrees with the defendants, but does concede that the trial court erred by awarding $4,038.44 for utilities, because this amount was already included as part of the CAM fees in the Past Due Rent portion of the trial court's calculation of damages.   Based on a review of the record before us, we conclude that the trial court erred by including any CAM fees or fees for "Utilities" in its damages calculation.

{¶ 26}   Section 9 of the lease provides:

9. Utilities

Tenant shall pay all charges for water, sewer, gas, electricity, telephone and other services and utilities used by Tenant on the Leased Premises during the term of this Lease unless otherwise expressly agreed in writing by Landlord. In the event that any utility or service provided to the Leased Premises is not separately metered, Landlord shall pay the amount due and separately invoice Tenant for Tenant's pro rata share of the charges. Tenant shall pay such amounts within fifteen (15) days of invoice. Tenant acknowledges that the Leased Premises are designed to provide standard office use electrical facilities and standard office lighting. Tenant shall not use any equipment or devices that utilize excessive electrical energy or which may, in Landlord's reasonable opinion, overload the wiring or interfere with electrical services to other tenants.

**{¶ 27}** Ikerd testified that in addition to the $4,392 monthly rent provided for in Section 2.A. of the lease, the tenant had also agreed to pay CAM fees. According to Ikerd, the CAM fee was $2.50 per square foot leased by the tenant. In the case of the defendants, the monthly CAM fee was determined by multiplying the rate of $2.50 by 3,294 square feet and dividing that product by twelve (months). This resulted in the $686.67 monthly CAM fee. Tr. 10-13. According to Ikerd, this explained why the defendants paid over $5,000 per month, rather than the $4,392 monthly rent provided for in the lease.

**{¶ 28}** Ikerd conceded at trial, however, that the CAM fee was not provided for in the lease. Indeed, Ikerd subsequently corrected this error by adding CAM fee provisions to leases involving other tenants. Tr. 32, 36. Furthermore, Ikerd testified that Section 9 of the lease does not relate to CAM fees, and that the defendants do not owe any monies for the electricity, gas,

water, and sewer that are specifically mentioned in Section 9 of the lease.   Tr. 34-37.

{¶ 29}   Section 29 of the lease provides: "This Agreement terminates and supersedes all prior understandings or agreements on the subject matter hereof.   This Agreement may be modified only by a further writing that is duly executed by both parties."   This provision of the lease precludes the plaintiff from relying on any prior agreement to pay a CAM fee and precludes any amendment to the lease that is not in writing and signed by the parties.   Therefore, given Ikerd's testimony about the absence of any provision in the lease regarding a CAM fee, we conclude that the trial court erred by including any amount for a CAM fee in the "Past Due Rent" portion of the damages calculation.   Furthermore, Ikerd's testimony establishes that the defendants did not owe the plaintiff for any utilities specifically identified in Section 9 of the Lease.   Consequently, the trial court also erred in awarding any damages under the "Utilities" portion of the damages calculation.

{¶ 30}   The defendants' Second and Sixth Assignments of Error are sustained in part, and overruled in part.

### V. The Trial Court Did Not Err by Denying the Defendants'
### Motion to Dismiss for Failure to Join a Necessary Party

{¶ 31}   The defendants' Fourth Assignment of Error states:

THE TRIAL COURT ERRED IN FAILING TO JOIN THE J. DEBRULLIN COMPANY AS A NECESSARY PARTY.

{¶ 32}   In their answer, the defendants included a defense that the plaintiff had failed to join necessary parties to the action, as required by Civ.R. 19 and 19.1.   The defendants contend

that Civ.R. 19 and 19.1 make joinder of a party mandatory when that party has an interest in the property that is the subject of the litigation. Consequently, the defendants contend that the trial court was required to join the J. Debrullin Company as a necessary party.

{¶ 33} In overruling the defendants' contentions that the J. Debrullin Company should be joined as a necessary party, the trial court stated, in part:

> The lease is signed by four individuals, one on behalf of the landlord and three as "tenant signature." Nowhere in the commercial lease is the DeBrullin Company, Inc. referenced. While Defendants may have independent claims to assert against The DeBrullin Company, Inc., for the breach of contract claim asserted by Plaintiff based upon the commercial lease, the Court does not find that The DeBrullin Company, Inc. is a necessary and indispensable party. The DeBrullin Company, Inc. is not a named party or signatory to the lease. Dkt. 37.

{¶ 34} We conclude that the trial court did not err in declining to join the J. DeBrullin Company as a party to the action. The J. DeBrullin Company was not a party to the lease, and therefore had no contractual or legal relationship with the plaintiff. Although the defendants often referred to Advanced Spas & Pools as a "subsidiary" of the J. Debrullin Company, there is no evidence in the record that Advanced Spas & Pools was an actual corporate subsidiary of the J. Debrullin Company. Even if this fact had been established, however, this fact alone would not mandate that a parent corporation be brought into an action involving a contract identifying a subsidiary corporation, without any mention of the parent corporation. Furthermore, contrary to the defendants' contentions, the fact that the J. Debrullin Company made the monthly rent payments to the plaintiff does not require that the J. Debrullin Company be joined in an action

involving the breach of a lease to which it was not a party.

{¶ 35}   The defendants' Fourth Assignment of Error is overruled.


**VI. The Trial Court Did Not Err in Failing to Grant Defendants'**

**Motion to Dismiss for Failure to State a Claim**

{¶ 36}   The Fifth Assignment of Error states:

THE TRIAL COURT ERRED IN FAILING TO GRANT APPELLANTS'

MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM UPON WHICH

RELIEF COULD BE GRANTED.

{¶ 37}   In this assignment of error, the defendants contend that the trial court should have granted their Civ.R. 12(B)(6) motion to dismiss for failure to state a claim upon which relief can be granted.   In particular, the defendants contend that:   (1) the lease contains no commencement date, which renders a damages calculation impossible; and (2) the signatures on the lease are neither witnessed nor notarized, as required by R.C. 5301.01.

{¶ 38}   The lease does in fact contain a commencement date.   The opening sentence of the lease provides that the lease "is made and effective December 1st, 2005[.]"   Then, Section 1.A. of the lease provides, in part: "Landlord hereby leases the Leased Premises to Tenant, and Tenant hereby leases the same from Landlord, for an 'Initial Term' beginning *upon opening or 6 weeks after Landlord obtains certificates of occupancy from City of Kettering, whichever comes first*, and ending December 31, 2010."   (Emphasis added.)   The italicized language was added by Micah Lakes.   Although the beginning term did not identify a particular calendar day, the beginning date is readily ascertainable by the language "upon opening or 6 weeks after Landlord

obtains certificates of occupancy." According to the defendants' trial Exhibit C, a security deposit was paid to the plaintiff on December 5, 2005, and the first rent payment was sent to the plaintiff on April 21, 2006. These facts suffice to establish a starting date of the contract with reasonable certainty. Furthermore, the crucial components of the damages calculation are when the defendants stopped making payments under the lease and the ending date of the lease, both of which were established by the evidence in the record.

{¶ 39} The defendants also contend that the lease should have been construed as a month-to-month tenancy, because the lease was not witnessed or notarized in accordance with R.C. 5301.01. But the defendants did not make this argument in the trial court. Therefore, this argument has not been preserved for appellate review.

{¶ 40} The defendants' Fifth Assignment of Error is overruled.


## VII. The defendants Failed to Preserve any Error Regarding the Trial Court's Award of Attorney Fees

{¶ 41} The defendants' Seventh Assignment of Error states:

THE TRIAL COURT ERRED IN AWARDING ATTORNEYS FEES.

{¶ 42} "The decision to award attorney fees and the amount thereof are within the discretion of the trial court." *Technical Construction Specialties, Inc. v. New Era Builders, Inc.*, 9th Dist. Summit No. 25776, 2012-Ohio-1328, ¶ 26, citing *Cassaro v. Cassaro*, 50 Ohio App.2d 368, 363 N.E.2d 753 (8th Dist.1976). The term "abuse of discretion" has been defined as a decision that is unreasonable, arbitrary, or unconscionable. *Huffman v. Hair Surgeon, Inc.*, 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

**{¶ 43}** In the September 18, 2012 Verdict and Judgment in Favor of Plaintiff, the trial court stated, in part: "Plaintiff is ordered to file a statement of reasonable costs and attorney fees within thirty (30) days of the date of this order. Defendants are ordered to file an opposition thereto within fourteen (14) days after Plaintiff's filing. Plaintiff's reply to be filed seven (7) days thereafter." Dkt. 41, p. 3.

**{¶ 44}** The plaintiff filed an affidavit setting forth the amount of attorney fees and costs requested, along with copies of underlying documentation for these fees and costs. The defendants did not file anything in opposition to the plaintiff's affidavit and documentation. Nor did the defendants request a hearing on the issue of attorney fees. The trial court subsequently awarded the plaintiff its requested attorney fees and costs in an amount totaling $11,094.55.

**{¶ 45}** The defendants contend that:

[C]ounsel for [plaintiff] filed an affidavit that set forth six paragraphs of one sentence each. With respect to the relevant amount of attorneys fees, he made a general representation that he performed legal services in the amount of $10,628.95. Although [defendants] could have filed an objection to this affidavit, it is difficult to object to a general statement that contains a single number. The court should have scheduled a hearing to inquire as to the specific hours that were performed, the basis for those hours and the fee's reasonableness. Brief, p. 24.

**{¶ 46}** We conclude that the trial court did not abuse its discretion in its award of attorney fees and costs to the plaintiff. Defendants did not request a hearing on the issue of attorney fees and "a trial court can, within its discretion, forgo the option of a hearing on the issue of attorney's fees." *Fisher v. Fisher*, 3d Dist. Henry No. 7-03-01, 2004-Ohio-290, ¶ 46

(Citations omitted.)   The trial court, in its September 18, 2012 Verdict and Judgment, afforded the defendants an opportunity to indicate, by making a filing in opposition to the attorney fees requested by the plaintiff, whether they had any objection to an award of fees in that amount, but the defendants did not do so.   In our view, it then became reasonable for the trial court to assume that the defendants had no objection to an award of attorney fees in the specified amount. Because the defendants forfeited the opportunity the trial court gave them to object to the attorneys fees requested by the plaintiff, the defendants cannot now raise this issue for the first time on appeal.

{¶ 47}   The defendants' Seventh Assignment of Error is overruled.


## VIII. Conclusion

{¶ 48}   The defendants' Second and Sixth Assignments of Error having been sustained, in part, and their other assignments of error having been overruled, that part of the judgment of the trial court awarding the plaintiff damages for CAM fees and utilities is Reversed; the judgment is Affirmed in all other respects; and this cause is Remanded for a re-calculation of damages.

. . . . . . . . . . . .

HALL and WELBAUM, JJ., concur.


Copies mailed to:
J. Andrew Root
Terry L. Lewis
Hon. Mary L. Wiseman