[Cite as *Lowe v. Lowe*, 2023-Ohio-3415.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT


| | | |
|---|---|---|
| SADIE M. LOWE | : | JUDGES: |
| | : | Hon. John W. Wise, P.J. |
| Petitioner-Appellant | : | Hon. Patricia A. Delaney, J. |
| | : | Hon. Andrew J. King, J. |
| -vs- | : | |
| | : | |
| ROBERT E. LOWE | : | Case No. 2023CA00015 |
| | : | |
| Petitioner-Appellee | : | O P I N I O N |


CHARACTER OF PROCEEDING:  Appeal from the Court of Common Pleas, Domestic Relations Division, Case No. 2021-DR-216


JUDGMENT:  Affirmed


DATE OF JUDGMENT:  September 25, 2023


APPEARANCES:

For Petitioner-Appellant                    For Petitioner-Appellee

DARREN W. DEHAVEN                    CHRISTOPHER COLERIDGE
3500 Massillon Road                         122 Central Plaza North
Suite 410                                           Canton, OH  44702
Uniontown, OH  44685

*King, J.*

{¶ 1}  Petitioner-Appellant, Sadie M. Lowe, appeals the December 30, 2022 judgment entry of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division, interpreting ambiguous language in a separation agreement she signed with her former husband, Petitioner-Appellee, Robert E. Lowe.

FACTS AND PROCEDURAL HISTORY

{¶ 2}  On March 3, 2021, the parties filed a petition to dissolve their 45-year marriage.  The parties also filed a separation agreement.  Both parties signed the documents, but only Robert was represented by counsel.  Sadie understood she was not represented by counsel and waived her right to consult an attorney.

{¶ 3}  On April 9, 2021, the parties filed an addendum to the separation agreement.

{¶ 4}  On April 13, 2021, the trial court granted the parties a dissolution and approved their separation agreement with the addendum.

{¶ 5}  On February 8, 2022, Sadie filed a motion to modify an ambiguous section of the separation agreement, specifically the section pertaining to the marital residence. The trial court held a hearing on November 16, 2022.  By judgment entry filed December 30, 2022, the trial court found the language regarding the marital residence to be ambiguous, and interpreted and modified the language to effectuate the intent of the parties,

{¶ 6}  Sadie filed an appeal with the following assignment of error:

I

{¶ 7}   "THE TRIAL COURT ERRED BY INCORRECTLY INTERPRETING THE AMBIGUOUS LANGUAGE IN SECTION 4(a) OF THE SEPARATION AGREEMENT."

I

{¶ 8}   In her sole assignment of error, appellant claims the trial court incorrectly interpreted ambiguous language in the separation agreement.  We disagree.

{¶ 9}   The issue in this case is not whether the separation agreement contained an ambiguity, but rather the trial court's interpretation of an ambiguous provision.  "Where there is confusion over the interpretation to be given to a particular clause, the trial court in enforcing the agreement has the power to hear the matter, clarify the confusion, and resolve the dispute."  *In re Marriage of Seders,* 42 Ohio App.3d 155, 157, 536 N.E.2d 1190 (9th Dist.1987).  We review the trial court's interpretation for an abuse of discretion. *Bond v. Bond,* 69 Ohio App.3d 225, 228, 590 N.E.2d 348 (9th Dist.1990) ("Whenever a clause in a separation agreement is deemed to be ambiguous, it is the responsibility of the trial court to interpret it.  The trial court has broad discretion in clarifying ambiguous language by considering not only the intent of the parties but the equities involved").  An abuse of discretion implies that the court's attitude is unreasonable, arbitrary, or unconscionable.  *Blakemore v. Blakemore,* 5 Ohio St.3d 217, 219, 450 N.E.2d 1140 (1983); *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87, 482 N.E.2d 1248 (1985).

{¶ 10} In the original separation agreement filed March 3, 2021, subsection 4(A) disposed of the marital residence as follows:

The parties own real estate located at * * * (hereinafter "Marital Residence").
Said property is currently paid off and there exists no loans, liens or

encumbrances thereon.  The parties agree that Wife shall receive the Marital Residence and all equity therein as her sole property.  The parties agree that Husband may use said residence as collateral in purchasing a separate piece of property and both parties shall execute any and all documents to do so upon request.  Beginning after sixty days following the date of the Final Decree, Wife shall have exclusive use of the Marital Residence.  Husband shall only be given access to same with 24 hours notice.  *Beginning after sixty days following the date of the Final Decree, Wife shall be responsible for the payment of all utilities and Husband shall be responsible for the payment of taxes and insurance.*  At all times, Wife shall keep the Marital Residence in good repair and not commit waste.  Should either party predecease the other, the surviving party shall retain all equity in the Marital Residence as their sole and separate property.  Any and all renovations or improvements shall be done by Husband and parties shall share equally in the expense associated with same.

The parties agree that the Court shall keep continuing jurisdiction over these issues so that they may be appropriately enforced or modified to effectuate the intent of this section.  (Emphasis added.)

{¶ 11} On April 9, 2021, the parties filed an addendum to the separation agreement, modifying the above emphasized language to: "Beginning on the date the final decree is signed, Sadie Lowe shall be responsible for the payment of all utilities.

Robert Lowe shall be responsible for the payment of taxes and insurance so long as they remain at their current approximate cost."

{¶ 12} Subsection 13 of the original separation agreement governs attorney fees and legal counsel and states: "The parties understand and agree that Attorney Christopher S. Coleridge represents the Husband only and that Wife is unrepresented by counsel. Wife states that she has been advised of her right to be represented by legal counsel, however, states that she wishes to proceed pro se and waive said right." Under this provision is a signature line for Sadie to sign which is blank, but she did sign the overall separation agreement.

{¶ 13} In a magistrate's order filed April 9, 2021, the magistrate indicated a telephone hearing was conducted and Sadie waived her right to counsel and wished to proceed with the hearing.

{¶ 14} On February 8, 2022, Sadie filed a motion to modify subsection 4(A) of the separation agreement, arguing the provision on the marital residence was ambiguous because while she was granted the marital residence and all the equity therein as her sole property, "unexplainable and irrational limitations" were placed on her use of the property. *See* Motion for Modification filed February 8, 2022. Sadie challenged the following:

{¶ 15} 1) Robert's right to use the marital residence as collateral in purchasing a separate piece of property, arguing if Robert defaulted on his loan, she could lose her home and all the equity.

{¶ 16} 2) Robert's right to be given access to her home with 24 hours notice, arguing "their affairs should be untangled." *Id.*

{¶ 17} 3) Robert's right to retain all equity in the marital residence should Sadie predecease him, arguing she is effectively prevented "from free choice on how to live her life given her greatly limited resources and restrictions placed on her 'sole property' by her ex-husband." *Id.*

{¶ 18} 4) Robert has neglected to transfer the title to the marital residence to her, subjecting the home to his creditors.

{¶ 19} 5) Robert's right to make any and all renovations and improvements to the marital residence while sharing equally in the expenses, arguing she "has lost the freedom and control over the maintenance and improvements of her home.  Husband chooses what needs repaired, when it will be repaired, who will make the repairs, and what the cost will be.  Without any say in the repairs, Wife is obligated to pay half of the cost." *Id.*

{¶ 20} Sadie sought a modification to make the marital residence provision "realistic, workable by the parties, and effectuate the intent of the parties" which was for her to receive the marital residence and all equity as her sole property.  *Id.*

{¶ 21} The trial court held a hearing on November 16, 2022, and heard from both parties.

{¶ 22} Sadie testified she understood she had a right to consult an attorney and agreed she was told that numerous times throughout the dissolution process, but chose not to employ counsel.  T. at 31, 34, 100, 107.  In fact, she had hired attorneys in the past.  T. at 31-32.  She admitted to voluntarily signing the separation agreement.  T. at 38, 81.  She agreed Robert paid off her vehicle so she owns it free and clear, she retained all the furnishings and new appliances in the marital residence, she receives spousal support in

the amount of $750.00 per month for life, Robert pays half of any expenses associated with any renovations or repairs, and he continues to mow the lawn and maintain the property.  T. at 40, 46-48, 56, 82, 103, 104, 117-118.

{¶ 23} Sadie's understanding of the marital residence was that the home would be hers until she died, and she planned on living there the rest of her life.  T. at 16-17, 52. She would pay the utilities and Robert would pay property taxes and insurance.  T. at 17. She understood each party had survivorship rights to the marital residence.  T. at 55-56. She admitted to reading all of the lines of the provision on the marital residence and understanding them prior to signing the agreement.  T. at 51-59, 81.

{¶ 24} Robert testified it was important for him to make sure Sadie had a place to live, but he needed to use the marital residence for collateral to purchase a home for himself; he was currently living in a trailer.  T. at 108-109.  The 24-hour notice provision was in place because he had a vested interest in the property and "wanted to make sure that it was up kept and whatever was needed to be done that I would do that to keep in uh proper upkeep."  T. at 110.  Robert explained the parties negotiated for the surviving party to receive the residence and all the equity; that was the parties' intent.  T. at 111-112, 132.

{¶ 25} In its judgment entry filed December 30, 2022, the trial court stated: "The Court finds that the parties intended for Sadie to live and have exclusive use of the marital residence during her lifetime subject to the conditions specifically included in section 4(A). Those conditions were included as a result of Robert agreeing to take on a majority of the marital debt."  Findings of Fact No. 24.  The trial court concluded the contested provision was ambiguous and based on the evidence presented, the parties "intended to allow

Sadie to live in the home during her life subject to the conditions that the parties specifically negotiated and agreed to. The parties also intended that the surviving spouse would receive the home on the other's death." Conclusions of Law Nos. 6 and 8. The trial court modified section 4(A) of the separation agreement: "The sentence that reads, 'The parties agree that Wife shall receive the Marital Residence and all equity there as her sole property' should be replaced with, 'The parties agree that Wife may live in the Marital Property during her lifetime. Wife may not sell or encumber the Marital Residence or take any action that would be contrary to these provisions.' " Conclusions of Law No. 9.

{¶ 26} Based on the evidence presented, we cannot find the trial court abused its discretion in its interpretation. The parties negotiated the terms of the separation agreement over several months. Sadie admitted to reading, understanding, and voluntarily signing the document. The parties intended for Sadie to have in effect a life estate in the marital residence. In turn, Robert did not receive any portion of the marital residence and in fact, agreed to continue paying the property taxes and insurance, maintain the property himself and pay half of any improvement/repair expenses, and continued to take care of the yard. He receives the marital residence only if Sadie predeceases him. Robert paid off the loan on Sadie's vehicle and agreed to pay her alimony for the rest of her life. Each party is receiving the benefits they agreed to.

{¶ 27} Upon review, we do not find the trial court abused its discretion in its interpretation of the ambiguous provision.

{¶ 28} The sole assignment of error is denied.

{¶ 29} The judgment of the Court of Common Pleas of Stark County, Ohio, Domestic Relations Division is hereby affirmed.

By King, J.

Wise, P.J. and

Delaney, J. concur.