[Cite as *State v. Owens*, 2024-Ohio-3383.]

COURT OF APPEALS
DELAWARE COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. John W. Wise, J.<br>Hon. Andrew J. King, J. |
| -vs- | Case No. 23 CAA 09 0088 |
| ROBERT OWENS | |
| Defendant-Appellant | O P I N I O N |


CHARACTER OF PROCEEDINGS:     Appeal from the Delaware County Court of
                              Common Pleas, Case No. 22 CRI 070420


JUDGMENT:                     Affirmed

DATE OF JUDGMENT ENTRY:       September 3, 2024


APPEARANCES:


For Plaintiff-Appellee                For Defendant-Appellant

DAN DRISCOLL                          APRIL F. CAMPBELL
CLARK COUNTY                          Campbell Law, LLC
PROSECUTING ATTORNEY                  545 Metro Place South, Suite 100
                                      Dublin, Ohio 43017
ROBERT C. LOGSDON
Assistant Prosecuting Attorney
50 East Columbia Street, Suite 449
Springfield, Ohio 45502

*King, J.*

{¶1} Defendant-appellant Robert Owens appeals the judgment entered by the Delaware County Common Pleas Court convicting him upon his pleas of guilty to five counts of theft (R.C. 2913.02(A)(3)) and one count of grand theft (R.C. 2913.02(A)(3)), and sentencing him to a term of community control for a period not to exceed 2.5 years. Plaintiff-appellee is the State of Ohio.

## FACTS AND PROCEDURAL HISTORY

{¶2} Owens worked as an attorney in Delaware, Ohio. With regards to six of his clients, Owens either failed to issue a refund to clients for whom he failed to perform work, or failed to refund the portion of a retainer which was not exhausted when the work was completed. Owens was indicted by the Delaware County Grand Jury on five counts of theft and one count of grand theft.

{¶3} Owens filed a motion for treatment in lieu of conviction (hereinafter "ILC") based on mental health issues he experienced at the time he committed the offenses. Before the trial court ruled on the ILC motion, Owens entered pleas of guilty to all charges, and was convicted upon his pleas.

{¶4} As to five of the six victims, Owens agreed to the amount of restitution to be ordered by the trial court. As to the count of grand theft, Owens disputed the amount of restitution owed to the victim, K.N. The trial court held a restitution hearing solely as to the amount owed K.N. K.N. alleged the amount owed was $103,996.65. After the hearing, the trial court found K.N.'s testimony to be credible, and found by a preponderance of the evidence Owens owed K.N. restitution in the amount of $103, 996.65.

**{¶5}** The case proceeded to sentencing. At the sentencing hearing, the trial court denied Owens's request for ILC. The trial court sentenced Owens to a term of community control not to exceed 2.5 years, and ordered Owens pay restitution to the victims totaling $121,896.95.

**{¶6}** Owens assigns the following errors to the trial court's September 11, 2023 judgment of conviction and sentence:

I. THE TRIAL COURT ABUSED ITS DISCRETION IN ORDERING OWENS TO PAY THE VICTIM $103,996.95 BECAUSE THAT AMOUNT OF LOSS WAS NOT SUPPORTED BY COMPETENT, CREDIBLE EVIDENCE.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN NOT GRANTING OWENS' REQUEST FOR INTERVENTION IN LIEU OF CONVICTION.

III. OWENS' PLEA AND SENTENCE SHOULD BE VACATED. THE TRIAL COURT ACCEPTED OWENS' GUILTY PLEA BEFORE DENYING HIS REQUEST FOR INTERVENTION IN LIEU OF CONVICTION. THUS, HIS PLEA DID NOT COMPLY WITH CRIM. R. 11 AND HIS SENTENCE WAS CONTRARY TO LAW.

I.

**{¶7}** In his first assignment of error, Owens argues the judgment ordering him to pay restitution to K.N. in the amount of $103,996.95 was not supported by the evidence

presented at the restitution hearing. He specifically argues the State produced no evidence concerning the amount of work he performed for K.N., the amount owed was subject to a flat fee agreement, the State did not present evidence concerning unbilled work, the amount was not supported by documentary evidence, and K.N. previously swore in a bankruptcy proceeding no one owed him money.

{¶8} We review restitution orders under an abuse of discretion standard. *State v. Cook*, 2017-Ohio-1503, ¶ 8 (5th Dist.); *State v. Andrews*, 2016-Ohio-7389, ¶ 40 (5th Dist.). "Abuse of discretion" means an attitude that is unreasonable, arbitrary or unconscionable. *Huffman v. Hair Surgeon, Inc.,* 19 Ohio St.3d 83, 87 (1985). Most instances of abuse of discretion will result in decisions that are simply unreasonable, rather than decisions that are unconscionable or arbitrary. *AAAA Enterprises, Inc. v. River Place Community Urban Redevelopment Corp.,* 50 Ohio St.3d 157, 161(1990). An unreasonable decision is one backed by no sound reasoning process which would support that decision. *Id.* "It is not enough that the reviewing court, were it deciding the issue de novo, would not have found that reasoning process to be persuasive, perhaps in view of countervailing reasoning processes that would support a contrary result." *Id.*

{¶9} "The amount of the restitution must be supported by competent, credible evidence from which the court can discern the amount of the restitution to a reasonable degree of certainty." *State v. Gears,* 135 Ohio App.3d 297, 300 (6th Dist. 1999). "Generally, the right to order restitution is limited to the actual damage or loss caused by the offense of which the defendant is convicted. Implicit in this principle is that the amount claimed must be established to a reasonable degree of certainty before restitution can be ordered." *State v. Williams*, 34 Ohio App.3d 33, 34 (2nd Dist. 1986).

**{¶10}** R.C. 2929.18(A)(1) permits a trial court to impose restitution "by the offender to the victim of the offender's criminal offense or the victim's estate in an amount based on the victim's economic loss," and the amount "shall not exceed the amount of the economic loss suffered by the victim as a direct and proximate result of the commission of the offense." "Economic loss" is defined in R.C. 2929.01(L) as follows:

> any economic detriment suffered by a victim as a direct and proximate result of the commission of an offense and includes any loss of income due to lost time at work because of any injury caused to the victim, and any property loss, medical cost, or funeral expense incurred as a result of the commission of the offense. "Economic loss" does not include non-economic loss or any punitive or exemplary damages.

**{¶11}** The trial court made the following findings following the restitution hearing:

> In a series of payments in 2018-2020, theft victim [K.N.] paid $150,824.45 to the defendant for legal services. The defendant prepared invoices that he sent to [K.N.] for those services, and the total amount billed by the defendant on those invoices was $45,827.50.
>
> The parties agree that the defendant did in fact provide legal services to [K.N.]. They agree, too, that the defendant provided a $1,000 refund to [K.N.] in March 2020.

The defendant contends that he and [K.N.] reached an agreement to resolve any fee dispute between them and that no money is currently owed by the defendant for overpayments that [K.N.] may have given to the defendant for legal services. The State disagrees with the Defendant's view, as does [K.N.]. According to the State, [K.N.] is still owed $103,996.95 for payments that he made to the defendant that exceeded the sum of (a) the $45,827.50 in legal services that the defendant provided to [K.N.], as documented in invoices sent by the defendant to [K.N.], and (b) the $1,000 refund given by the defendant to [K.N.] in March 2020.

I find [K.N.]'s testimony credible, and I conclude by a preponderance of the evidence that the economic loss for which [K.N.] should be compensated is currently $103,996.95.

**{¶12}** Judgment Entry, 8/4/2023.

**{¶13}** The State presented the testimony of a forensic accountant from the Ohio Attorney General's office, who testified she reviewed not only the documentation provided by the victims, but also Owens's IOLTA account information and his law office accounts. From the documentation provided to her, she concluded the amount owed by Owens to K.N. was $103,996.65.

**{¶14}** Owens testified he and K.N. came to a flat fee agreement to settle the final price of his representation to K.N. in the amount of $97,750. Owens testified he initially entered into an hourly fee agreement with K.N., but because of a dispute over fees, he drafted the flat fee agreement in February 2020 to settle the fee dispute between the

parties.   Owens testified the total amount charged pursuant to the original hourly fee agreement would have "far exceeded" $97,500, and the flat fee agreement provided K.N. with a discount.   K.N. testified he did not sign the agreement, which Owens introduced into evidence with a signature purporting to be K.N.'s signature.

{¶15}  Although the trial court did not expressly find the flat fee agreement was not a valid agreement between the parties, such a finding is implicit in the trial court's finding K.N. was a credible witness and its rejection of Owens's claim the fee owed was $97,750. The weight to be given to the evidence and the credibility of the witnesses are issues for the trier of fact. *State v. DeHass,* 10 Ohio St.2d 230, (1967). The trier of fact "has the best opportunity to view the demeanor, attitude, and credibility of each witness, something that does not translate well on the written page." *Davis v. Flickinger*, 77 Ohio St.3d 415, 418 (1997).

{¶16}  Assuming arguendo K.N. signed the flat fee agreement, we find the trial court could still have rejected the agreement as evidence of the fee owed by K.N. because it was not a proper flat fee agreement.

{¶17}  The Ohio Supreme Court Board of Professional Responsibility issued an advisory opinion discussing the requirements the Rules of Professional Conduct impose on any flat fee agreement. Advisory Opinion, 2016-1. Foremost in its analysis is Prof.Cond.R. 1.5(a); it provides that lawyer shall not "make an agreement for, charge, or collect an *illegal* or clearly excessive fee." Of key importance here is that the defendant admitted stealing from his client. This admission strongly supports a conclusion that even if valid the fee agreement was illegal.

**{¶18}** In addition to the admission of guilt, the evidence adduced at the hearing shows this fee agreement was illegal and prohibited by rule. Owens admitted initially he entered into an hourly fee agreement with K.N., and the flat fee agreement was entered into after his representation of K.N. in an attempt to resolve a fee dispute between the parties. He testified $97,750 represented a "discount" of the fees owed by K.N. Owens entered a plea of guilty to the charge of grand theft with regard to his representation of K.N., which is inconsistent with his testimony at the restitution hearing he provided services in excess the amount he claimed the parties agreed on as a fee. The evidence presented by the State indicated Owens billed K.N. $45,827.50, an amount less than half of the "discounted" amount set forth in the flat fee agreement Owens claimed settled fees between the parties. However, Owens presented no evidence of unbilled work to explain the inconsistency between the amount billed and his claim he did more than $97,750 worth of hourly work for K.N.

**{¶19}** A flat fee agreement entered in advance of representation is valid if it comports with the Rules of Professional Conduct. Advisory Opinion, 2016-1. Here, the purported flat fee agreement was not entered in advance of Owens's representation of K.N., but by Owens's own admission was entered into after representation. Considering the incongruities in Owens testimony regarding the flat fee agreement and the fact the purported agreement was entered after, rather than in advance of representation, we find the trial court did not err in rejecting the agreement as evidence of the fee agreement between the parties.

**{¶20}** Owens argues K.N. failed to include the refund owed by Owens in his bankruptcy proceeding. K.N. testified at the time he signed the bankruptcy documents,

he was under the impression whatever money was left over in his account would be paid back by Owens.  As discussed earlier in this opinion, the trial court expressly found K.N.'s testimony to be credible.

**{¶21}**  We find the trial court's judgment ordering Owens to pay K.N. $103,996.95 is supported by the evidence presented at the restitution hearing.

**{¶22}**  The first assignment of error is overruled.

II.

**{¶23}**  In his second assignment of error, Owens argues the trial court abused its discretion in denying his request for ILC.  He argues the trial court impermissibly required more than what is required by statute to grant ILC.

**{¶24}**  R.C. 2951.041(A)(1) provides in pertinent part:

> If an offender is charged with a criminal offense, including but not limited to a violation of section 2913.02, 2913.03, 2913.11, 2913.21, 2913.31, or 2919.21 of the Revised Code, and the court has reason to believe that drug or alcohol usage by the offender was a factor leading to the criminal offense with which the offender is charged or that, at the time of committing that offense, the offender had a mental illness, was a person with an intellectual disability, or was a victim of a violation of section 2905.32 or 2907.21 of the Revised Code and that the mental illness, status as a person with an intellectual disability, or fact that the offender was a victim of a violation of section 2905.32 or 2907.21 of the Revised Code was a factor leading to the offender's criminal behavior, the court may accept, prior to

the entry of a guilty plea, the offender's request for intervention in lieu of conviction.

**{¶25}** R.C. 2951.041(B) sets forth the eligibility requirements for ILC. However, " 'even when a defendant satisfies all of the statutory requirements, a trial court has discretion to determine whether the particular defendant is a good candidate for [intervention].'" *State v. Leisten*, 2006–Ohio–2362, ¶ 7 (2nd Dist.), *quoting State v. Schmidt*, 2002–Ohio–3923, ¶ 9 (2nd Dist.). While eligibility determinations under R.C. 2951.041 are matters of law subject to de novo review, a trial court's decision whether to grant treatment in lieu of conviction rests within its sound discretion, and we, therefore, apply an abuse of discretion standard of review. *State v. Parker*, 2009–Ohio–1835, ¶ 11 (3rd Dist.).

**{¶26}** The trial court denied Owens's request for ILC, stating its reasoning at the sentencing hearing:

After thinking about all these things, I conclude that an intervention outcome is not warranted in this case. I do think that Mr. Owens's position of trust with his clients and his leadership role in the community means that an intervention outcome would demean the seriousness of the conduct. I certainly don't doubt the mental health diagnoses that these experts have provided, and I certainly know and acknowledge that a mental health diagnosis can justify in an appropriate case an intervention outcome, so I

certainly accept those matters that the defense has put forward, but, again,

I'm simply not comfortable on these facts imposing an intervention outcome.

**{¶27}** Sent. Tr. 27-28.

**{¶28}** Owens cites this Court to *State v. Fullenkamp,* 2001-Ohio-1648 (2nd Dist.). In that case, the trial court denied the defendant's ILC request, finding the defendant's alcohol dependency was not serious enough to grant ILC. The court of appeals held the statute only requires drug or alcohol usage be a factor leading to the criminal behavior, and does not require the defendant to be alcohol-dependent; therefore, the trial court arbitrarily narrowed the eligibility criterion of the statute by rejecting the defendant's ILC request on the basis that she was not alcohol-dependent. *Id.*

**{¶29}** In the instant case, we find the trial court did not graft a more stringent requirement than that imposed by statute, and the instant case is therefore distinguishable from *Fullenkamp.* Pursuant to R.C. 2951.041(B)(6), an offender is eligible for ILC if "[t]he offender's drug usage, alcohol usage, mental illness, or intellectual disability, or the fact that the offender was a victim of a violation of section 2905.32 or 2907.21 of the Revised Code, whichever is applicable, was a factor leading to the criminal offense with which the offender is charged, intervention in lieu of conviction would not demean the seriousness of the offense, and intervention would substantially reduce the likelihood of any future criminal activity." Although the trial court didn't expressly find Owens was ineligible pursuant to this subsection, the trial court found ILC would demean the seriousness of the offenses due to Owens's position of trust in relationship to the victims of the offenses and his role in the community, a factor the trial court is specifically

permitted to consider pursuant to statute.  We find the trial court did not abuse its discretion in denying ILC in the instant case.

**{¶30}** The second assignment of error is overruled.

III.

**{¶31}** In his third assignment of error, Owens argues his plea was not voluntary because the trial court did not rule on his motion for ILC until after he entered his plea of guilty.

**{¶32}** R.C. 2951.041(A)(1) provides in pertinent part:

> If an offender is charged with a criminal offense, including but not limited to a violation of section 2913.02, 2913.03, 2913.11, 2913.21, 2913.31, or 2919.21 of the Revised Code, and the court has reason to believe that drug or alcohol usage by the offender was a factor leading to the criminal offense with which the offender is charged or that, at the time of committing that offense, the offender had a mental illness, was a person with an intellectual disability, or was a victim of a violation of section 2905.32 or 2907.21 of the Revised Code and that the mental illness, status as a person with an intellectual disability, or fact that the offender was a victim of a violation of section 2905.32 or 2907.21 of the Revised Code was a factor leading to the offender's criminal behavior, *the court may accept, prior to the entry of a guilty plea*, the offender's request for intervention in lieu of conviction. (Emphasis added).

**{¶33}** The Ohio Supreme Court has summarized the ILC procedure as set forth in the statute:

ILC is a statutory creation that allows a trial court to stay a criminal proceeding and order an offender to a period of rehabilitation if the court has reason to believe that drug or alcohol usage was a factor leading to the offense. R.C. 2951.041(A)(1). If, after a hearing, the trial court determines that an offender is eligible for ILC, then it shall accept the offender's guilty plea, place the offender under the general control and supervision of the appropriate probation or other qualified agency, and establish an intervention plan for the offender. R.C. 2951.041(C) and (D). The intervention plan shall last at least one year, during which the offender is ordered to abstain from alcohol and illegal drug use, to participate in treatment and recovery-support services, and to submit to regular random testing for drug and alcohol use. R.C. 2951.041(D). If the offender successfully completes the intervention plan, the trial court shall dismiss proceedings against the offender without an adjudication of guilt and may order the sealing of records related to the offense. R.C. 2951.041(E). If the offender fails to comply with any term or condition imposed as part of the intervention plan, the court shall enter a finding of guilt and impose the appropriate sanction. R.C. 2951.041(F).

**{¶34}** *State v. Massien*, 2010-Ohio-1864, ¶ 9.

{¶35} Both the statute and the Ohio Supreme Court's summary of the procedure set forth in the statute suggest the trial court should rule on the ILC motion before accepting the defendant's guilty plea. However, the language of the statute does not explicitly require the motion be ruled on prior to accepting a plea.

{¶36} In the instant case, Owens has not demonstrated his pleas were not voluntary, knowing and intelligent due to the order of events in the trial court. Prior to accepting his pleas of guilty to the charges, the trial court explained all the sentencing options. After explaining the potential prison and community control sanctions available to the court in sentencing, the trial court stated, "And I know there's been at least some discussion in the case about a possible intervention outcome." Sent. Tr. 17. The trial court then explained to Owens how ILC worked, in the same manner the trial court explained its other sentencing options. Owens indicated to the trial court he had no questions about any of the consequences he faced in the case, and had no questions about the ILC program. The record affirmatively demonstrates Owens entered his pleas with full knowledge his request for ILC may not be granted, exposing him to the potential of a prison sentence or community control sentence.

{¶37}  The third assignment of error is overruled.  The judgment of the Delaware

County Common Pleas Court is affirmed.



By: King, J.

Gwin, P.J.  and

Wise, J. concur.